United States District Court
Southern District of Texas
**ENTERED**
October 15, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARLIN GIPSON<br>*Plaintiff*, | § § § | |
| v. | § § § | Civil Action No. 4:19-CV-2591 |
| HARRIS COUNTY, TEXAS, ET AL.,<br>*Defendants*. | § § § | |

# MEMORANDUM AND RECOMMENDATION

Pending before the Court in this civil rights case is Defendant Harris County's Motion to Dismiss Plaintiff's Second Amended Complaint. ECF 44.[1] Having considered the parties' submissions and the law, the Court recommends the motion be GRANTED.

## I. Background

Plaintiff contends that Harris County Precinct 1 Constable Deputies Gerald Cates, Mitchell Jones, and Rudy Guillen (the Deputy Defendants) violated his constitutional rights and committed intentional state law torts in the course of arresting him on charges of failing to produce identification and evading arrest.[2] Plaintiff alleges that on July 18, 2017 he was a local college student passing out business cards for the lawn care business he was running with his brother when he was approached by Deputy Cates.[3] Cates asked Plaintiff for his identification, which Plaintiff refused to provide. Plaintiff asked Deputy Cates for his badge

---

[1] The District Court has referred this case to this Magistrate Judge for pretrial management. ECF 41.

[2] Plaintiff filed his Original Complaint asserting claims against Harris County Sheriff's Office, Harris County, and John Doe Constables 1 and 2 on July 17, 2019. ECF 1. After dismissal of Harris County Sheriff's Office, the Court granted Plaintiff leave to file a First Amended Complaint adding Harris County Constable Precinct 1, Constable Alan Rosen, and Deputies Cates, Jones, and Guillen. ECF 19. All Defendants filed motions to dismiss, and the Court granted Plaintiff leave to file a Second Amended Complaint. ECF 42. Plaintiff's Second Amended Complaint (ECF 31-1) is the operative pleading in this case.

[3] The Second Amended Complaint does not distinguish between the three Deputies, but in his Response Plaintiff concedes that his initial confrontation was with Deputy Cates. ECF 54 at 3.

number, which Deputy Cates refused to provide. Plaintiff then walked to his home to avoid further confrontation. Deputy Cates called for back-up. ECF 31-1 at ¶¶ 12-16.

Deputies Jones and Guillen followed Plaintiff home and demanded that he produce identification. Plaintiff again refused, locked the front door of his house, and locked himself in his mother's bedroom. The Deputies broke down both doors and entered the bedroom with a police dog. One of the Deputies tasered Plaintiff in the back while he was standing still with his hands in the air. The taser caused Plaintiff to make a sudden movement and the dog attacked him, repeatedly biting his arm. A Deputy tasered Plaintiff a second time and then a Deputy stepped on his upper back near his neck and head. Plaintiff was transported to Ben Taub Hospital for treatment. Plaintiff was charged with failure to provide identification and evading arrest, but the charges were dropped. *Id.* at ¶¶ 17-26.

Plaintiff asserts claims against Harris County under 28 U.S.C. § 1983 asserting that an official custom or policy of Harris County and its failure to train its deputies caused the deprivation of his Constitutional rights, and under Texas state law for negligent hiring, training, retention, and supervision. Harris County moves to dismiss all claims against it for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The County argues it is entitled to dismissal of Plaintiff's claims pursuant to *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 691 (1978) because Plaintiff has failed to identify a final policymaker for the County and has failed to plead his claims with factual specificity; and because the County enjoys sovereign immunity from Plaintiff's state tort claim that has not been waived by the Texas Tort Claims Act.

## II.     Rule 12(b)(6) Standards

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), this Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 701 (5th Cir. 2017) (citing *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). However, the court does not apply the same presumption to conclusory statements or legal conclusions. *Iqbal*, 556 U.S. at 678-79.

Generally, the court may consider only the allegations in the complaint and any attachments thereto in ruling on a Rule 12(b)(6) motion. If a motion to dismiss refers to matters outside the pleading it is more properly considered as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). However, the court may take judicial notice of public documents, and may also consider documents a defendant attaches to its motion to dismiss under 12(b)(6) if the documents are referenced in the plaintiff's complaint and central to the plaintiffs' claims. *See Norris v. Hearst Trust,* 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000); *King v. Life Sch.*, 809 F. Supp. 2d 572, 579 n.1 (N.D. Tex. 2011).

### III. Analysis

#### A. Municipal liability under 42 U.S.C. § 1983

To establish a claim under 42 U.S.C. § 1983 against Harris County, Plaintiff must show that the County had a policy or custom that was the "moving force" behind the violation of his constitutional rights. *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 691 (1978). Because no respondeat superior liability exists under § 1983 Plaintiff cannot demonstrate a § 1983 claim simply by showing that a County employee violated his rights. *Id.* Rather, to be liable for a violation of Plaintiff's constitutional rights, the County itself must have caused the violation through a policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). More specifically, to hold the County liable under § 1983, Plaintiff must identify (a) a policymaker, (b) an official policy or custom, and (c) a violation of his constitutional rights, and must establish that the official policy or custom was the moving force behind the constitutional violation. *Id.*

##### 1. Section 1983 false arrest and excessive force claims

##### a. As a matter of law, Constable Rosen is not a policy maker for Harris County

Plaintiff alleges his arrest and the Deputy Defendants' use of excessive force violated his constitutional rights, but the Second Amended Complaint fails to identify the policymaker or the custom or policy that allegedly caused the alleged constitutional violations.[4] In his Response to the County's Motion to Dismiss, Plaintiff argues that

---

[4] The Second Amended Complaint makes only a general allegation that Plaintiff's constitutional rights were violated

4

Precinct 1 Constable Alan Rosen is a final policymaker for Harris County. ECF 52 at 3-4. However, "whether a local government official is a final policymaker in a particular area is a question of state law." *Harris Cty. v. Coats,* No. 14-17-00732-CV, 2020 WL 581184, at *6 (Tex. App.— Houston [14th Dist.] Feb. 6, 2020, n.p.h.).

Texas courts and the Fifth Circuit have repeatedly held that a Constable is not a final policy maker for Harris County with respect to law enforcement issues. In *Coats*, a Texas Court of Appeals explained that "to be a final policymaker for a county, a constable must occupy a relationship to the county such that his or her 'edicts or acts may fairly be said to represent official county policy.'" 2020 WL 581184, at *7. In a thorough opinion, the Court explained that "the principal organ of county government in Texas is the commissioners court" and while a Constable has several areas of responsibility, the Sheriff is the final policy maker for a County in the area of law enforcement. *Id.* at 8-9 ("Texas law has long held that the sheriff is a county's final policymaker as to law enforcement for purposes of county liability under section 1983."). The *Coats* court unequivocally held "that the state constitution and relevant state and local laws do not vest a precinct constable in Harris County with final policymaking authority over law enforcement for the county."

---

and that the County's customs and policies were a direct cause of the violation:

> Defendant Harris County and Harris County Constable Precinct 1 are liable under 42 U.S.C. § 1983 because the deprivation of Plaintiff's constitutional rights was inflicted pursuant to their official policies or customs. Such policies or customs were a direct cause-in-fact of the deprivation of Plaintiff's constitutional rights. The policies or customs were the proximate cause of the injuries sustained. The policies or customs reflect a deliberate indifference to the risk that a violation of a constitutional or statutory right will result from following the policies or customs. These allegations are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

ECF 31-1 ¶ 39.

5

2020 WL 581184, at *9. The Fifth Circuit's interpretation of Texas law with respect to whether a Constable is a final policymaker for Harris County is consistent with the decision in *Coats*. *See Castro v. McCord*, 259 F. App'x 664, 668 (5th Cir. 2007) ("our caselaw . . . indicates that, as a matter of law, constables are not policymakers"); *Tonkin v. Harris Cty. Tex.*, 257 F. App'x 762, 764 (5th Cir. 2007) (because plaintiffs could not show that constable was a final policy maker for the county their § 1983 claims failed); *see also Birge v. Harris Cty.*, No. 4:09-CV-660, 2009 WL 10693565, at *2 (S.D. Tex. May 21, 2009) ("The Fifth Circuit has held that county constables in Texas are not policymakers for the county, and therefore that a county may not be held liable for a constable's conduct." (citing *Tonkin*)).

In summary, Plaintiff's Second Amended Complaint fails to state a claim against the county under *Monell* because it fails to allege that a policymaker for Harris County implemented a policy that led to the deprivation of Plaintiff's constitutional rights. *Piotrowski*, 237 F.3d at 578. Even if the Second Amended Complaint is construed for *Monell* purposes to allege that Constable Rosen is the policymaker, the Complaint still fails to state a claim because, as a matter of law, Constable Rosen is not a policy maker for Harris County. *Coats,* 2020 WL 581184, at *9.

### b. Plaintiff has failed to identify a custom or policy that was the "moving force" behind the alleged violations of his constitutional rights.

Plaintiff has also failed to identify a policy or custom that was the moving force behind the violation of Plaintiff's constitutional rights as required by *Piotrowski*. Plaintiff makes only vague and conclusory allegations regarding a custom or policy that allegedly caused the false arrest and/or use of excessive force. The pleading standards set forth in

*Twombly* apply to municipal liability claims. *Ratliff v. Aransas Cty., Texas*, 948 F.3d 281, 285 (5th Cir. 2020). As stated above, "[t]o state a Monell claim against [Harris] County, [Plaintiff is] required to plead facts that plausibly establish: a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Id*. at 285 (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). For example, in *Ratliff*, the complaint failed to establish a custom or policy "because the only facts that Ratliff alleged with any specificity relate to his shooting." 948 F.3d at 285 (alterations noted in original omitted). In order to plausibly allege a practice that rises to the level of a custom or policy sufficient to support municipal liability, Ratliff needed to do "do more than describe the incident that gave rise to his injury." *Id.*; *see also Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997) ("The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.").

Harris County raised this deficiency in its first motion to dismiss and Plaintiff was permitted to amend his Complaint to cure the deficiency. However, he failed to so. Therefore, Harris County's motion to dismiss Plaintiff's claim alleging an official custom or policy of Harris County was the motivating force behind the violation of his constitutional right to be free from excessive force should be granted.

### 2. Section 1983 failure to train claim

The Supreme Court has held that "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that

7

is actionable under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197, 1205, 103 L. Ed. 2d 412 (1989). Therefore, to state a claim on his § 1983 failure-to-train theory, Plaintiff must plead a policymaker, as discussed above, and must plead facts plausibly establishing "(1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Ratliff*, 948 F.3d at 285 (quoting *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010).

The Second Amended Complaint alleges the following failure to train cause of action against Harris County:

> Defendants Harris County and Harris County Constable Precinct 1 are also liable under 42 U.S.C. § 1983 because (1) their training procedures relating to arrests, interactions with community members, and appropriate force are inadequate; (2) Defendants were deliberately indifferent to the constitutional rights of the public in adopting the training policies; and (3) the inadequate training has directly caused Plaintiff's damages—he has been unlawfully arrested and battered by Defendants. These allegations are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

ECF 31-1 ¶ 36. Plaintiff's allegations do nothing more than recite the elements of the cause of action in a conclusory way and do not satisfy federal pleading standards. Plaintiff's failure to train claim suffers from the same fatal flaws discussed above, *i.e.* that he has not alleged that a final policymaker for the County is responsible for the failure train, and his allegations that the failure to train caused his injuries are vague, conclusory, and fail to comply with the *Twombly* standards. In order for "liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir.

2010) (citing *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir.2005): *See Doe on behalf of M.F. v. Harris Cty. Precinct Six Constable Sylvia Trevino*, 452 F. Supp. 3d 548, 558 (S.D. Tex. 2020) (plaintiff failed to state a claim for failure to train where she did not allege with the necessary specificity how the training was defective and whether supervisor had any knowledge of a pattern of violations as necessary to demonstrate deliberate indifference). For example, in *Ratliff* the Fifth Circuit held that the complaint, which stated that a "deficiency in training actually caused Defendants . . . to violate Plaintiff's constitutional rights," lacked specific allegations supporting a plausible causation inference and was nothing more than a legal conclusion that warranted dismissal under Rule 12(b)(6). 948 F.3d at 285. Similarly, Plaintiff's Second Amended Complaint fails to allege failure to train with the requisite specificity and should be dismissed.

**B. Negligent failure to train under state law**

In order to state a claim against Harris County for a state law tort of negligent hiring, training, retention, and supervision, Plaintiff must show that Harris County has waived its sovereign immunity. The Texas Tort Claims Act (TTCA) waives governmental immunity for personal injury caused by the "use of tangible personal property." TEX. CIV. PRAC. & REM. CODE § 101.021(2). However, the TTCA does not waive governmental immunity for intentional torts. *Id.* § 101.057(2).

The Second Amended Complaint states the following as Plaintiff's tort claim against Harris County:

> Defendants Harris County and Harris County Constable Precinct 1 had a duty to protect Plaintiff from harm resulting from their employment of constables that committed unlawful acts against Plaintiff. Defendants breached that duty

> by hiring, retaining, and failing to train, supervise, or discipline these constables. The conduct of Defendants proximately caused Plaintiff significant damages.

ECF 31-1 at 9, ¶ 2. In an attempt to avoid the bar of immunity, Plaintiff argues that Harris County's "negligence in supervising Deputy Constables Gerald Cates, Mitchell Jones, and Rudy Guillen involved tasers and a police dog as tangible property. This property directly caused Plaintiff's injury." ECF 52 at 6. But the TTCA does not apply to claims arising out of an intentional tort, or to "claims against a governmental unit arising out of the same conduct that formed the basis of the intentional tort claims against its employee." *Goodman v. Harris Cty.*, 571 F.3d 388, 394 (5th Cir. 2009) (citing *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex.2001)).

The Texas Supreme Court has ruled that a governmental entity may be liable for negligence in connection with an employee's intentional tort "if the negligence is distinct from the tort," *and* the negligent supervision or training claim independently satisfies the "tangible property" requirement. *Texas Dep't of Criminal Justice-Cmty. Justice Assistance Div. v. Campos*, 384 S.W.3d 810, 815 (Tex. 2012). In *Campos*, the plaintiff alleged that prison guards used tangible property, a laundry cart, to block a doorway during the sexual assault of plaintiff. *Id.* However, the plaintiff's allegations that TDCJ personnel "failed to screen, educate, train, supervise, investigate, or otherwise direct employees" did not include allegations that "use of tangible property was involved in any of these failures" and thus governmental immunity was not waived under the Tort Claims Act. *Id.*; *see also Petta*, 44 S.W.3d at 581 (Plaintiff's negligent training claim did not involve tangible personal property and thus was not cognizable under the Tort Claims Act); *Gooden*, 571 F.3d at

10

580-81 (claims of negligent failure to train or supervise are not within the purview of the TTCA).

Texas courts and federal courts in the Fifth Circuit have repeatedly applied *Campos* and *Petta* to bar a negligent training and supervision claims in cases similar to this one. In *Harris Cty. v. Annab*, 547 S.W.3d 609, 612 (Tex. 2018), Annab attempted to meet the limited waiver of the TTCA by alleging the County negligently "used" tangible personal property by authorizing a police officer to possess the gun he used to shoot her. The Texas Supreme Court, citing *Campos*, rejected Annab's claim that the County's decisions about the officer's fitness to possess a firearm established a waiver of immunity under the TTCA. *See also City of Laredo v. Reyna*, No. 04-15-00147-CV, 2015 WL 4479834, at *3 (Tex. App.—San Antonio, 2015, no pet.) (holding that negligent supervision and training claims "involve the transfer and receipt of information and not the use of tangible personal property or real property" and thus there is no waiver of immunity under the TTCA for such claims).

In *Young v. Green*, Civil Action No. H-11-1592, 2013 WSL 775388, at *26 (S.D. Tex. Feb. 28, 2013), the plaintiff sued the City of Houston under state law for negligent training and supervision of Officer Green, who hit plaintiff in the head with a baton. The court dismissed the claim because the plaintiff did not identify "any tangible property that the HPD negligently misused in the course of training, investigating, or discipling Green for prior conduct." *Id.*; *Matthews v. Harris Cty.*, Civil Action No. H-18-0014, 2018 WL 3818001, at *5 (S.D. Tex. Aug. 8, 2018) (plaintiff's failure to allege that a "use" of tangible

property was involved in Harris County's failure to train and supervise required dismissal under the TTCA).

Plaintiff has presented no authority for finding waiver of Harris County's governmental immunity under factual allegations similar to those in the Second Amended Complaint. Based on clear Texas Supreme Court precedent, the Court concludes that under the facts of this case the TTCA does not waive Harris County's immunity for negligent hiring, training, retention, or supervision and thus Harris County's motion to dismiss this claim should be granted.

## IV.     Conclusion and recommendation

Plaintiff has had two opportunities to amend his Complaint but has failed to cure the defects that form the basis of Harris County's Motion to Dismiss. It is not an abuse of discretion to grant dismissal without leave to amend where a Plaintiff has had prior opportunities to plead more factual support for his claims and has not done so, particularly where, as here, the Response does not set forth additional facts Plaintiff intends to plead.[5] *See Patterson v. Houston Indep. Sch. Dist.*, 570 F. App'x 367, 369 (5th Cir. 2014) (no abuse of discretion to deny plaintiff leave to file third amended complaint); *Reed v. City of Texas City*, 161 F. Supp. 2d 474, 478 (S.D. Tex. 2015) (dismissing Amended Complaint without leave to replead where plaintiff alleged only that Texas City "failed to adequately train" officers and the officers' conduct "resulted from their lack of training" and "comported with

---

[5] While qualified immunity issues may have understandably limited discovery from the Deputy Defendants pending resolution of their motion to dismiss, the Court is aware of no restriction or agreement limiting Plaintiff's ability to obtain discovery from Harris County regarding policies and training. *See* ECF 16. The discovery deadline in this case was August 1, 2020, ECF 18, and no party moved to extend that deadline.

Texas City's illegal de facto policies.").

For the reasons discussed above, the Court **RECOMMENDS** that Harris County's Motion to Dismiss be **GRANTED** and Plaintiff's claims against Harris County be **DISMISSED**.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c).  Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on October 15, 2020, at Houston, Texas.

                                                             _____
                                                             Christina A. Bryan
                                                             United States Magistrate Judge