United States District Court
Southern District of Texas

**ENTERED**

October 15, 2020

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARLIN GIPSON | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 4:19-CV-2591 |
| | § | |
| | § | |
| HARRIS COUNTY, TEXAS, ET AL., | § | |
| *Defendants*. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the Court in this civil rights case is Defendants Deputy Gerald Cates, Deputy Mitchell Jones, and Deputy Rudy Guillen's Motion to Dismiss Plaintiff's Second Amended Complaint for Lack of Subject Matter Jurisdiction, for Failure to State a Claim, and in the Alternative, Motion for More Definite Statement (Deputy Defendants' Motion). ECF 46.[1]  Having considered the parties' submissions and the law, the Court recommends the Deputy Defendants' Motion be GRANTED IN PART and DENIED IN PART.

### I.    Background

Plaintiff contends that Harris County Precinct 1 Constable Deputies Gerald Cates, Mitchell Jones, and Rudy Guillen (the Deputy Defendants) violated his constitutional rights and committed intentional state law torts in the course of arresting him on charges of failing to produce identification and evading arrest.[2]  Plaintiff alleges that on July 18, 2017 he was

---

[1] The District Court has referred this case to this Magistrate Judge for pretrial management.  ECF 41.

[2] Plaintiff filed his Original Complaint asserting claims against Harris County Sheriff's Office, Harris County, and John Doe Constables 1 and 2 on July 17, 2019. ECF 1.  After dismissal of Harris County Sheriff's Office, the Court granted Plaintiff leave to file a First Amended Complaint adding Harris County Constable Precinct 1, Constable Alan Rosen, and Deputies Cates, Jones, and Guillen. ECF 19.  All Defendants filed motions to dismiss, and the Court granted

a local college student passing out business cards for the lawn care business he was running

with his brother when he was approached by Deputy Cates.[3]   Cates asked Plaintiff for his

identification, which Plaintiff refused to provide.  Plaintiff asked Deputy Cates for his badge

number, which Deputy Cates refused to provide.  Plaintiff then walked to his home to avoid

further confrontation.  Deputy Cates called for back-up.  ECF 31-1 at ¶¶ 12-16.

Deputies Jones and Guillen followed Plaintiff home and demanded that he produce

identification.  Plaintiff again refused, locked the front door of his house, and locked himself

in his mother's bedroom.  The Deputies broke down both doors and entered the bedroom

with a police dog.  One of the Deputies tasered Plaintiff in the back while he was standing

still with his hands in the air.  The taser caused Plaintiff to make a sudden movement and

the dog attacked him, repeatedly biting his arm.  A Deputy tasered Plaintiff a second time

and then a Deputy stepped on his upper back near his neck and head. Plaintiff was

transported to Ben Taub Hospital for treatment.  Plaintiff was charged with failure to

provide identification and evading arrest, but the charges were dropped.  *Id.* at ¶¶ 17-26.

The Deputy Defendants have moved under Federal Rule of Civil Procedure 12(b)(1)

to dismiss Plaintiff's state law tort claims for lack of jurisdiction, and under Federal Rule of

Civil Procedure 12(b)(6) to dismiss Plaintiff's § 1983 claims based on qualified immunity

and failure to plead sufficient facts.  In the alternative, the Deputy Defendants move for a

more definite statement under Federal Rule of Civil Procedure 12(e).

---

Plaintiff leave to file a Second Amended Complaint.  ECF 42.  Plaintiff's Second Amended Complaint (ECF 31-1) is the operative pleading in this case.

[3] The Second Amended Complaint does not distinguish between the three Deputies, but in his Response Plaintiff concedes that his initial confrontation was with Deputy Cates.  ECF 54 at 3.

## II.    Standards of Review

### A.  Rule 12(b)(1) Standards

When subject matter jurisdiction is challenged, the court "is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has power to hear the case." *Montez v. Dep't of the Navy*, 392 F.3d 147, 149 (5th Cir. 2004); *Krim v. Pcorder.com*, 402 F.3d 489, 494 (5th Cir. 2005). The court may consider any of the following in resolving a Rule 12(b)(1) motion: "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008); *see also Schaeffler v. United States*, 889 F.3d 238, 242 (5th Cir. 2018). The plaintiff bears the burden of establishing subject matter jurisdiction. *Exelon Wind 1, L.L.C. v. Nelson*, 766 F.3d 380, 388 (5th Cir. 2014). If the plaintiff fails to meet his burden, the case must be dismissed. *Id.*

### B.  Rule 12(b)(6) Standards

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), this Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698,

701 (5ᵗʰ Cir. 2017) (citing *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369

F.3d 464, 467 (5ᵗʰ Cir. 2004)).  However, the court does not apply the same presumption

to conclusory statements or legal conclusions. *Iqbal*, 556 U.S. at 678-79.

###   III.    Analysis

####    A. Plaintiff's state law tort claims are barred by the Texas Tort Claims Act

The Texas Tort Claims Act "provides a limited waiver of immunity for certain suits

against governmental entities and caps recoverable damages."  *Mission Consol. Indep. Sch.*

*Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008).  Section 101.106 of the Texas Tort

Claims Act, titled "Election of Remedies," provides in part:

> (a) The filing of a suit under this chapter against a **governmental unit** constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter.
> (b) The filing of a suit against any **employee** of a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against the governmental unit regarding the same subject matter unless the governmental unit consents.

TEX. CIV. PRAC. & REM. CODE § 101.106(a-b) (emphasis added).  In other words, the Texas

Tort Claims Act puts Plaintiff to ***an irrevocable election at the time of filing suit*** between

suing either a governmental entity under the Tort Claims Act or suing an individual

employee. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655-56 (Tex.

2008); *Texas Bay Cherry Hill, L.P. v. City of Fort Worth*, 257 S.W.3d 379, 397 (Tex.

App.—Fort Worth 2008).  "The purpose of §101.106 is to force Plaintiffs to cautiously

determine at the outset of the case whether to sue the government *or* the employee

individually 'because the decision regarding whom to sue has irrevocable consequences'

under the effect of §101.106(a-b)." *Garcia v. City of McAllen, Texas*, No. 7:19-CV-00068,

2020 WL 1660095, at *9 (S.D. Tex. Apr. 1, 2020) (emphasis in original).  If a Plaintiff fails

to make the election and improperly sues both the governmental unit and the employee,

the employee will be dismissed upon motion by the governmental unit.[4]  *Id.*; TEX. CIV.

PRAC. & REM. CODE § 101.106(e).  The election to file suit against a governmental unit bars

a same-subject-matter suit against an employee in both the employee's official and

individual capacities. *Texas Bay Cherry Hill, L.P.*, 257 S.W.3d at 401.

Plaintiff does not dispute the Deputy Defendants' legal position.  ECF 54 at 6.

Instead, Plaintiff abandons all state law tort claims against the Deputy Defendants and seeks

leave to amend the Second Amended Complaint to assert state law tort claims only against

Harris County and Harris County Constable Precinct 1.[5]  *Id.*  Based on the law and Plaintiff's

decision to abandon his state tort claims against the Deputy Defendants, the Court

recommends that Plaintiff's state law tort claims against the individual Deputy Defendants

be dismissed.

### B.  Qualified Immunity Analysis

#### 1.  Qualified immunity legal standards.

The Deputy Defendants have moved to dismiss Plaintiff's § 1983 claims against

them based on qualified immunity.  ECF 46.  "Although qualified immunity is 'nominally

---

[4] Harris County's Motion to Dismiss the Deputies pursuant to the Texas Tort Claims Act (ECF 45) is the subject of a separate Memorandum and Recommendation.

[5] Repleading state law tort claims against Harris County and Harris County Constable Precinct 1 would be futile. The Texas Tort Claims Act does not waive immunity for the torts of false arrest, false imprisonment, battery, and intentional infliction of emotional distress. The Act waives a governmental unit's sovereign immunity only for tort claims arising from the operation of a motor vehicle and use of tangible personal or real property.  TEX. CIV. PRAC. & REM. CODE § 101.021.  Also, in accordance with this Court's ruling on the motion to dismiss of Precinct 1 (ECF 43), Precinct 1 lacks the legal capacity to be sued in its own right.

an affirmative defense,' the plaintiff bears a heightened burden 'to negate the defense once

properly raised.'" *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012).  When the defense

of qualified immunity is raised in a motion to dismiss, the court must determine whether

the plaintiff has alleged facts that, if proved, would defeat a claim of immunity.  *Westfall*

*v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018); *see also Zapata v. Melso*n, 750 F.3d 481, 485

(5th Cir. 2014) (explaining that the "careful procedure under which a district court may

defer its qualified immunity ruling" requires the court to find that "the plaintiff's pleadings

assert facts which, if true, would overcome the defense of qualified immunity.").  "The

purpose of requiring such allegations is, of course, to permit the trial court, and [the Fifth

Circuit], if necessary, to implement a qualified immunity defense at the earliest possible

stage of litigation." *Westfall*, 903 F.3d at 542.

When determining whether qualified immunity bars a claim against a defendant, a

court must decide: (1) whether the defendant's conduct violated a constitutional right; and

(2) whether that right was clearly established at the time.  *Pearson v. Callahan,* 555 U.S.

223, 232 (2009).  The court may exercise discretion in deciding which of the two prongs

should be addressed first in light of the circumstances in the particular case at hand.  *Id.* at

236; *see also Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (The court "can

decide one question or both.").  The relevant and dispositive inquiry in determining

whether a right is clearly established is whether it would be clear to a reasonable officer

that his conduct was unlawful in the situation he confronted." *Lytle v. Bexar Cty., Tex.*,

560 F.3d 404, 410 (5th Cir. 2009); *see Pearson,* 555 U.S. at 243-44 (2009). The Supreme

Court has "repeatedly told courts ... not to define clearly established law at a high level of

generality," and to look at the particular conduct as issue. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

## 2. Collective v. individual analysis of qualified immunity

In a case such as this involving more than one individual defendant, the Court must decide whether to address claims of qualified immunity collectively or individually. Where officers work together to effectuate an arrest, courts often address qualified immunity concurrently as to all the officers. *Sinegal v. City of El Paso,* 414 F. Supp. 3d 995, 1004 (W.D. Tex. 2019). However, where the officers did not act in unison, the Court addresses qualified immunity separately for each individual defendant. *Id.*; *see also Pena v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018) ("We analyze the officers separately because they are alleged to have participated in distinct ways.").

The Second Amended Complaint primarily makes collective allegations against "the Constables." *See* ECF 31-1. However, Plaintiff's Response clarifies that Deputy Cates's participation in the alleged constitutional violations is distinct from that of the other two Deputies. *See* ECF 54 at 3. Based on his review of documents and dash camera footage produced by Harris County, Plaintiff concedes that Deputy Cates did not follow him when he walked home, but instead called for backup and then arrested Plaintiff's friends and questioned them about Plaintiff. *Id.* Deputy Cates went to Plaintiff's home to identify him only *after* Plaintiff was arrested by Deputies Jones and Guillen. *Id.* Thus, in

this case it is appropriate to analyze qualified immunity for Deputies Jones and Guillen collectively and for Deputy Cates individually.

### 3. Plaintiff has alleged facts that, if true, would overcome qualified immunity for Deputies Jones and Guillen

Plaintiff's Response addresses Deputies Jones and Guillen's qualified immunity only in relation to his claim for excessive force. *See* ECF 51. Because Plaintiff has not disputed Deputies Jones and Guillen's qualified immunity as to his § 1983 claims for false arrest, the Court concludes Plaintiff has abandoned those claims. *See Arias v. Wells Fargo Bank, N.A.*, No. 3:18-CV-00418-L, 2019 WL 2770160, at *2 (N.D. Tex. July 2, 2019) ("When a plaintiff fails to defend a claim in response to a motion to dismiss or summary judgment motion, the claim is deemed abandoned." (citation omitted)).[6]

A plaintiff asserting an excessive force claim under § 1983 must show he "suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force was objectively unreasonable." *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). The determination of whether the use of force was reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (identifying what have come to be known as the "*Graham* factors"). While as a general

---

[6] Alternatively, the false arrest claim against Deputies Jones and Guillen should be dismissed for failure to state a claim for the same reasons addressed below in Section III.B.4 regarding Deputy Cates.

proposition the right to be free from excessive force is clearly established, "the dispositive question is whether the violative nature of *particular* conduct is clearly established." *Morrow*, 917 F.3d at 875 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)).

The Fifth Circuit has held that using a taser and a police dog against a detainee who is not actively resisting, does not have a weapon, and is not suspected of a serious offense constitutes a clearly established use of excessive force. *See Cooper v. Brown,* 844 F.3d 517, 525 (5th Cir. 2016) (allowing police dog to bite plaintiff who was not attempting to resist arrest or flee was objectively unreasonable); *Newman v. Guedry*, 703 F.3d 757, 764 (5th Cir. 2012) (accepting as true plaintiff's testimony on summary judgment that "he committed no crime, posed no threat to anyone's safety, and did not resist the officers or fail to comply with a command," the officers' use of a taser was objectively unreasonable in light of clearly established law at the time of the incident); *Ramirez v. Martinez*, 716 F.3d 369, 379 (5th Cir. 2013) (fact issues precluded summary judgment on qualified immunity where plaintiff "alleged he posed no threat to the officers and yet was tased twice, including once after he was handcuffed and subdued while lying face down on the ground, in violation of clearly established law."); *Clark v. Massengill*, 641 F. App'x 418, 421 (5th Cir. 2016) (it was clearly established that tasing "an unarmed man with an artificial right hip and a crippled right arm who had just driven his car into a tree . . . while lying on the ground, after he had submitted and after he had been bitten repeatedly by a police dog" was unconstitutionally excessive force under the circumstances); *Samples v. Vadzemnieks*, 900 F.3d 655, 661 (5th Cir. 2018) ("[A] taser is a force that, deployed when not warranted, can result in a constitutional deprivation.").

Applying the *Graham* factors to Plaintiff's allegations, the Court finds that the Second Amended Complaint alleges facts that, if true, would defeat qualified immunity for Deputies Jones and Guillen, as required for Plaintiff's § 1983 excessive force claims to survive the Deputy Defendants' Motion to Dismiss under *Westfall*, 903 F.3d at 542, and *Zapata*, 750 F.3d at 485.

*Severity of the crime.*   With respect to the severity of the crime at issue, Plaintiff contends he was merely handing out business cards for his lawn care business when he was approached by Deputy Cates. He was charged only with failing to provide identification and evading detention, and there is no reason to infer from the factual allegations that he was suspected of a serious crime.

*Threat to safety.*   Nothing before the Court demonstrates that Plaintiff posed a threat to the public or the officers either at the time of the initial confrontation or in his home. There is no indication Plaintiff had a weapon.  He alleges that he was standing still with his hands in the air when a Deputy tasered him the first time.  He alleges he had been bitten and seriously wounded by the police dog when he was tasered a second time, and he was lying face down on the floor when a Deputy stepped on his back near his neck and head. Based on these allegations, Plaintiff did not pose a threat to the safety of the Deputies or the public that warranted the degree of force used against him.

*Actively resisting arrest.*   Plaintiff concedes that he refused to provide Deputy Cates with his identification and then walked home, locked the front door, and locked himself in his mother's bedroom.  However, there are no facts to suggest he was actively resisting arrest after Deputies Jones and Guillen broke down the doors and entered the bedroom with

tasers and a police dog.  Instead, as described above, Plaintiff contends the Deputies found

him in his mother's bedroom standing still with his hands in the air.

    *Attempting to flee*.  Although Plaintiff had left the scene and evaded Deputy Cates'

request for identification, nothing about the facts alleged in the Second Amended

Complaint demonstrate that Plaintiff was attempting to flee the bedroom when the Deputy

Defendants tasered and "sicced" the police dog on him.

    Defendants argue "Plaintiff's bare allegations would have the Court believe that the

Deputies tasered and arrested Plaintiff for no reason at all . . .."  ECF 46.  While the Court

is certain that Deputies Jones and Guillen dispute Plaintiff's version of the events incident

to his arrest, as a matter of pleading, Plaintiff has alleged facts that would show Deputy

Jones's and Deputy Guillen's actions were not objectively reasonable under the

circumstances.  Further, the fact that Plaintiff has failed to specify the particular acts of

each Deputy does not require dismissal of his claims at this stage of the proceedings.

Plaintiff has had the benefit of only limited discovery and he alleges he had his back to the

Deputies at least part of the time during the incident.[7]  The collective allegations

demonstrate a plausible claim for excessive force and Deputies Jones and Guillen will have

a further opportunity on summary judgment to present evidence and argue in support of

their claims for qualified immunity.  *See Webb v. Livingston*, No. 6:13CV711, 2014 WL

1049983, at 6 (E.D. Tex. Mar. 17, 2014) (citing *Schultea*, 47 F.3d at 1432 for the proposition

---

[7] If the Court adopts the recommendations in this Memorandum and Recommendation, Plaintiff should be allowed limited discovery from Deputies Jones and Guillen on issues specific to the defense of qualified immunity."

that a Plaintiff is not required to plead facts "peculiarly within the knowledge of defendants").

### 4. Plaintiff has failed to allege facts that state a plausible claim for relief against Deputy Cates.

The Deputy Defendants' Motion seeks dismissal of Plaintiff's § 1983 claims against Deputy Cates for failure to state a claim upon which relief can be granted because Deputy Cates was not present at the scene when the arrest and excessive force took place.[8]   Plaintiff argues that his claims should not be dismissed as to Deputy Cates because discovery may clarify "the actual extent of Defendant Cates's involvement" and may show he remains liable for unlawful arrest. *Id.*   However, no discovery can overcome the legal obstacles preventing Plaintiff from stating a claim against Deputy Cates for deprivation of his constitutional rights.

In order state a claim for false arrest a plaintiff must show he was arrested without probable cause. *Thomas v. Pohlmann*, 681 F. App'x 401, 406 (5th Cir. 2017); *see also Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) ("If there was probable cause for any of the charges made ... then the *arrest* was supported by probable cause, and the claim for false arrest fails." (emphasis in original; quoting *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir.1995)).   In his Second Amended Complaint Plaintiff concedes that he refused to display his identification as instructed by Deputy Cates, "walked home to avoid further confrontation," and ignored a second request by a Deputy to present identification at his

---

[8] Deputy Cates moved for dismissal of all state tort claims on the same 12(b)(6) grounds, but the Court has already ruled those claims must be dismissed pursuant to the Texas Tort Claims Act.

home.  ECF 31-1 at ¶¶ 15-17. These admitted facts preclude Plaintiff from demonstrating the Deputies lacked probable cause to arrest him for failure to provide identification and evading detention.

Plaintiff also cannot state a claim against Deputy Cates for excessive force as a matter of law.  Although the Second Amended Complaint asserts causes of action only collectively against "the Constables," it is clear from Plaintiff's Response that Deputy Cates did not personally participate in the allegedly excessive use of force against Plaintiff.[9]  *See* ECF 54 at 3.  Based on his review of documents and dash camera footage produced by Harris County, Plaintiff concedes that Deputy Cates did not follow him home but instead pursued and arrested his friends and questioned them about Plaintiff.  *Id.*  Deputy Cates went to Plaintiff's home *after* Plaintiff was arrested to identify him.  *Id.*  Therefore, Cates could not have participated in the alleged excessive force incident to the arrest because he was not present when other Deputies knocked down the door, deployed

---

[9] While it is the general rule that a motion to dismiss must be decided on the pleadings alone, the Fifth Circuit has recognized that the interplay between federal pleading rules and qualified immunity is "complex and difficult." *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995).  In this case, the Deputy Defendants' Motion does not attach evidence outside of the pleadings, but it does rely on "undisputed" factual assertions that are not expressly set forth in the Second Amended Complaint but are without a doubt central to Plaintiff's claims against Deputy Cates.  ECF 46 at 8-9; *see Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000) (a court may consider documents a defendant attaches to its motion to dismiss under 12(b)(6) if the documents are referenced in the plaintiff's complaint and central to the plaintiffs' claims.).  Plaintiff's Response confirms the facts presented in the Motion as to Deputy Cates are undisputed and that Plaintiff does not object to the Court's consideration of the undisputed facts in resolving the instant Motion. ECF54 at 3.  Under the "careful procedure" developed in the Fifth Circuit for determining whether further factual development of the qualified immunity defense is necessary, a plaintiff must state specific facts that allow the court to infer that the defendant is liable and not protected by qualified immunity. *Zapata*, 750 F.d at 485.  To make this determination, a district court may order a plaintiff to file a reply in accordance with Federal Rule of Civil Procedure 7. *Shultea*, 47 F.3d at 1433.  Here, Plaintiff's Response serves the same function as a Rule 7 reply and supplants the need for further factual development on qualified immunity as to Deputy Cates.  The Response confirms that Plaintiff cannot state specific facts to overcome the qualified immunity of Deputy Cates.  The Court's consideration of Plaintiff's Response in making its recommendation is consistent with the need to determine qualified immunity at the earliest possible stage of the proceedings. *Id.* at 1432.

their tasers, and allowed the police dog to attack Plaintiff.

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.1983).  There are two narrow exceptions to this rule that allow a plaintiff to state a § 1983 excessive force claim against a defendant that was not personally involved in the constitutional violation:  supervisor liability and bystander liability. *Pena*, 879 F.3d at 620.  Neither applies in this case based on the facts stated by Plaintiff.

Because there is no respondeat superior liability under § 1983, a supervisor may be liable for the actions of his subordinate if the supervisor was personally involved or there is sufficient causal connection between the supervisor's action and the alleged constitutional deprivation. *See Khansari v. City of Houston*, 14 F. Supp. 3d 842, 852–53 (S.D. Tex. 2014) ("Absent personal involvement or notice, supervisors cannot be held liable for subordinates' actions."); *Pena*, 879 F.3d at 621 (supervisor's direct order to subordinate to fire taser satisfies causal connection).  The only alleged causal connection between Deputy Cates's actions and the alleged excessive force is that Cates called for back-up.  Plaintiff does not allege that Deputy Cates was the supervisor of Deputy Jones or Deputy Guillen.

The Fifth Circuit has held that "an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995).  This is known as bystander liability.  *Pena*, 879 F.3d at 621; *Nowell v. Acadian Ambulance Serv.*, 147 F. Supp. 2d 495, 506–07 (W.D. La. 2001).  In order to establish bystander

liability, the plaintiff must show that the officer was present at the scene and "had a reasonable opportunity to realize the excessive nature of the force and a realistic opportunity to stop it." *Vasquez v. Chacon*, No. CIV.A. 3:08CV2046MBH, 2009 WL 2169017, at *6 (N.D. Tex. July 20, 2009), *aff'd*, 390 F. App'x 305 (5th Cir. 2010).  Deputy Cates did not arrive at Plaintiff's home until after his arrest, *i.e.*, after the use of excessive force had ended.  Therefore, Plaintiff cannot state a § 1983 bystander liability claim against Deputy Cates.

The Court concludes that Plaintiff has failed to allege specific facts sufficient to state a claim against Cates for a violation of his Constitutional rights to be free from false arrest and excessive force.  Therefore, the Court recommends the Deputy Defendants' Motion to Dismiss be granted as to all claims against Deputy Cates.

### 5.  Defendants' Rule 12(e) Motion

"If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002).  "A motion for a more definite statement should be denied where the movant is reasonably able to respond to the pleading." *TransCanada USA Operations, Inc. v. Michels Corp.*, No. CV H-18-4483, 2019 WL 7372164, at *2 (S.D. Tex. Dec. 31, 2019).  The Second Amended Complaint alleges unconstitutional conduct against all three Deputies collectively.  Other factual allegations in the Second Amended Complaint and the Plaintiff's Response made it possible to ascertain that Plaintiff could not state a plausible claim against Deputy Cates as matter of law.  The nature of Plaintiff's allegations did not hinder Defendants' ability to

respond to the Second Amended Complaint.  Plaintiff alleges that he was tasered on the back, attacked by a police dog, was tasered again, and a Deputy stepped on his upper back or neck.  ECF 31-1 at ¶¶ 18-22.  Plaintiff alleges he had his back to the Deputies and then was lying face down during the incident; therefore, he may not be able to identify which Deputy did what.  However, Defendants will not be hindered in their ability to move for summary judgment by the joint nature of Plaintiff's allegations because they have personal knowledge of their individual actions on July 18, 2017.  There is no reason to delay consideration of the qualified immunity issue and potentially trial by ordering a more definite statement.

IV.   **Conclusion, Recommendation, and Order**

For the reasons discussed above, the Court **RECOMMENDS** that the Deputy Defendants' Motion be **GRANTED IN PART and DENIED IN PART**.  Specifically, the Court recommends that Plaintiff's state law tort claims and § 1983 false arrest claim be dismissed as to all Deputy Defendants.  The Court further recommends that Plaintiff's § 1983 excessive force claim be dismissed as to Deputy Cates.  The Court also recommends that the Deputy Defendants' Motion to dismiss Plaintiff's § 1983 excessive force claim be denied as to Deputy Jones and Deputy Guillen without prejudice to a motion for summary judgment.  The Court further **RECOMMENDS** that Defendants' Rule 12(e) Motion be **DENIED.**

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c).  Failure to file written objections within the time

period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on October 15, 2020, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge