# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **MARLIN GIPSON** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | |
| | § | |
| **HARRIS COUNTY SHERIFF'S OFFICE,** | § | **CIVIL ACTION NO. 4:19-cv-2591** |
| **et al.;** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS JONES' AND GUILLENS'**
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Creighton,*
  483 U.S. 635 (1987)..................................................................................................17

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986)....................................................................................................7

*Boudreaux v. Swift Transp. Co., Inc.,*
  402 F.3d 536 (5th Cir. 2005) ......................................................................................7

*Burnett v. N.Y.* Cent. R.R.,
  380 U.S. 424 (1965)..................................................................................................10

*Bush v. Strain,*
  513 F.3d 492 (5th Cir. 2008) ....................................................................................18

*Clark v. Massengill,*
  641 F.App'x 418 (5th Cir. 2016) ..............................................................................18

*Cooper v. Brown,*
  844 F.3d 517 (5th Cir. 2016) ..........................................................12, 14, 16, 17, 18, 20

*Darden v. City of Forth Worth, Texas,*
  880 F.3d 722 (5th Cir. 2018) ....................................................................................16

*Day v. McDonough,*
  547 U.S. 198 (2006)................................................................................................8, 9

*Escobar v. Montee,*
  895 F.3d 387 (5th Cir. 2018) ........................................................................13, 14, 16

*Flores v. City of Palacis,*
  381 F.3d 391 (5th Cir. 2004) ........................................................................11, 12, 17

*Forsyth v. Barr,*
  19 F.3d 1527 (5th Cir. 1994) .....................................................................................8

*Graham v. Connor,*
  490 U.S. 386 (1989)..................................................................................................12

*Hathaway v. Bazany,*
  507 F.3d 312 (5th Cir. 2007) ....................................................................................11

*Int'l Shortstop, Inc. v. Rally's, Inc.,*

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

*939 F.2d 1257 (5th Cir. 1991)* ................................................................................7

*Jacobsen v. Osborne*,
   133 F.3d 315 (5th Cir. 1998) ................................................................................9

*Krupski v. Costa Crociere S. p. A.*,
   560 U.S. 538 (2010) ............................................................................................10

*Lambert v. United States*,
   44 F.3d 296 (5th Cir.1995) ..................................................................................10

*Laxton v. Gap Inc.*,
   333 F.3d 572 (5th Cir. 2003) ................................................................................7

*McBroom v. Payne*,
   2010 WL 3942010 (S.D. Miss. Oct. 6, 2010) ......................................................9

*McInnis v. Alamo Community College Dist.*,
   207 F.3d 276 (5th Cir. 2000) ................................................................................7

*Moore v. Willis Indep. Sch. Dist.*,
   233 F.3d 871 (5th Cir. 2000) ................................................................................7

*Newman v. Geudry*,
   703 F.3d 757 (5th Cir. 2012) ..........................................................8, 12, 14, 15, 16, 18

*Orr v. Copeland*,
   844 F.3d 484 (5th Cir. 2016) ................................................................................7

*Pena v City of Rio Grande City*,
   879 F.3d 613 (5th Cir. 2018) ..............................................................................11

*Ramirez v. Martinez*,
   716 F.3d 369 (5th Cir. 2013) ..............................................................................18

*Samples v. Vadzemnieks*,
   900 F.3d 655 (5th Cir. 2018) ..............................................................................18

*Shumpert v City of Tulepo*,
   905 F.3d 315 (5th Cir. 2018) ..............................................................................20

*Sinegal v. City of El Paso*,
   414 F.Supp.3d 995 (W.D. Tex. 2019)..................................................................10

*U.S. ex rel. Bias v. Tangipahoa Par. Sch. Bd.*,
   816 F.3d 315 (5th Cir. 2016) ................................................................................9

*Winzer v. Kaufman County*,

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

916 F.3d 464 (5th Cir. 2019) ...........................................................................................9

*Wood v. Milyard*,
566 U.S. 463 (2012).............................................................................................8, 9

**Statutes**
Fed. R. Civ. P. 56 .............................................................................................................7
Fed. R. Civ. P. 8(c)1 .........................................................................................................8

**Other Authorities**
3 Moore's Federal Practice §§ 15.02[1] (3d ed.2009) ....................................................10
5 C. Wright & A. Miller, Federal Practice and Procedure § 1278 (3d ed. 2004)..............8
Advisory Committee's 1966 Notes 122............................................................................10

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................ii

TABLE OF CONTENTS ....................................................................................................v

TABLE OF EXHIBITS ......................................................................................................vi

I.   INTRODUCTION ...................................................................................................1

II.  STATEMENT OF FACTS.......................................................................................3

III. STANDARD OF REVIEW ......................................................................................7

IV.  LEGAL ARGUMENT .............................................................................................8

  A.   Defendants Have Not Met Their Burden of Proving Plaintiff's Claims are Time-Barred .....8

    1.   Defendants Waived Any Statute of Limitations Affirmative Defense ............................8

    2.   Even Assuming Defendants Have Not Waived Their Affirmative Defense, Plaintiff's Claims are Timely ....................................................................................9

  B.   Defendants' Conduct Should be Analyzed Collectively ...................................................10

  C.   Plaintiff Have Alleged Sufficient Material Issues of Fact Regarding Defendants' Qualified Immunity Defense Requiring Denial of Summary Judgment.........................................................11

    1.   Defendants' Actions Violated Plaintiff's Constitutional Rights.....................................11

      a.   Plaintiff Committed No Crime ...................................................................................13

      b.   At a Minimum There are Material Questions of Fact Regarding Whether Plaintiff Posed an Immediate Threat.....................................................................................13

      c.   At a Minimum There are Material Questions of Fact Regarding Whether Plaintiff was Resisting Arrest.......................................................................................................15

    2.   Plaintiff's Rights Were Clearly Established Under the Law ..........................................17

V.   CONCLUSION ......................................................................................................20

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF EXHIBITS</u>

Exhibit A:      Declaration of Plaintiff Marlin Gipson

Exhibit B:      Photograph of Plaintiff Marlin Gipson's injuries

Exhibit C:      Photograph of Plaintiff Marlin Gipson's injuries

Exhibit D:      Photograph of Plaintiff Marlin Gipson's injuries

Exhibit E:      Photograph of Plaintiff Marlin Gipson's injuries while handcuffed to a hospital bed

Exhibit F:      Harris County Constable's Office Department Canine Policy

Exhibit G:      Harris County Constable's Office Use of Force Policy

Plaintiff MARLIN GIPSON ("Plaintiff"), by and through his attorneys, files this response to Defendants Deputy Mitchell Jones' ("Jones" or "Defendant Jones") and Deputy Rudy Guillen's ("Guillen" or "Deputy Guillen") (together, "Defendants") Motion for Summary Judgment ("the Motion."). In support thereof, Plaintiff submits the following:

## I.    <u>INTRODUCTION</u>

Qualified Immunity is indeed a difficult burden for a plaintiff to overcome. Yet here the facts are so plainly egregious that the burden is met, and it may not shield Defendants from liability. This was recognized by this Court when it denied Defendants' Motion to Dismiss. (Dkt. No. 63 at p. 9; Adopted by Order at Dkt. No. 69). This Court denied Defendants' motion to dismiss Plaintiff's claim that Defendants unlawfully used excessive force against him in violation of Section 1981 of the Civil Rights Act of 1866 ("Section 1981"). (*Id.*) Recognizing that "the Fifth Circuit has held that using a taser and a police dog against a detainee who is not actively resisting, does not have a weapon, and is not suspected of a serious offense constitutes a clearly established use of excessive force," the Court found that Plaintiff "alleges facts that, if true, would defeat qualified immunity for Deputies Jones and Guillen." The Court further found that "Plaintiff has alleged facts that would show Deputy Jones's and Guillen's actions were not objectively reasonable under the circumstances," and Defendants would have the ability on summary judgment to present evidence supporting their claims. (*Id.*)

Yet after having the benefit of discovery, Defendants have failed to offer any evidence to refute Plaintiff's claims and this Court's findings. Instead, Defendants are left to desperately grasp at straws and argue in contravention of the evidence that has been produced that Plaintiff (1) was resisting arrest when he was cornered in the closet by four constables and a police dog, standing with his hands up as instructed <u>at least seven times by the constables</u> (as is recorded on Defendants' produced body camera video); (2) may have been reaching for a weapon, despite the fact that not one constable yelled "weapon" and after Plaintiff was arrested not one constable checked the area they claim Plaintiff was

reaching for a weapon to see if there was in fact a weapon there; and (3) Plaintiff continued to resist arrest while lying on the ground in the closet, with the police dog biting his arm and he was completely immobile from being tased, and therefore needed to be actively tased for an additional ten seconds, leaving the dog attacking him for thirty seconds.  All these arguments are contrary to the summary judgment evidence, which in fact corroborates that Defendants are not entitled to qualified immunity.

First, we now have body camera video evidence that verifies that Defendants acted unlawfully in their actions against Plaintiff.  It is indeed rather unfortunate that at the instant Plaintiff is hit with the taser and then attacked by the police dog that the constable wearing the body camera chose to turn away so we are not able to see what happens, but we are still able to see exactly what happened until that point, and we hear what happened next. We also have Defendants' produced taser log that verifies that Plaintiff was tased three times, and actively tased for seventeen seconds.  Seventeen seconds when he was laying on the ground, immobile, and being attacked by the police dog.  The body camera evidence proves that Plaintiff was cornered in a closet, with his hands up and palms open – as was instructed by the constable on the video - begging for mercy, and never taking his eyes off the police dog. Defendant's arguments that he was resisting arrest and could have been looking for a weapon are not only completely fabricated, but downright shameful now that we can see with our eyes and hear with our ears what happened.[1]  None of the constables yelled "weapon," and after he was handcuffed, none of them checked the shelf they now claim had a weapon to verify if there was one there.

Second, we now also know that Harris County Sheriff's Office had both a Department Canine Policy and a Department Use of Force Policy. These published policies include specific instructions

---

[1] The shamefulness of Defendants' unsupported allegations are laid bare when Defendant Guillen claims that when they took Plaintiff to the hospital to treat the injuries they caused him, he "overheard an X-Ray technician state that Gipson had a foreign object in his stomach, which I understood to be a bag of drugs." (Dkt. No. 77-2 at ¶ 13). For the avoidance of doubt, Plaintiff vehemently denies this outrageous allegation.

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

regarding the use of a Canine and the use of a Taser.  These policies unambiguously do not allow for the use of force that Defendants used, and their parameters for the use of force mirror the legal guidance. Defendants knew their actions were unconstitutional and unlawful when they acted. Defendants are not entitled to qualified immunity.

## II.   STATEMENT OF FACTS

In 2017 Plaintiff was a college student in Houston pursuing a degree in business and running a lawn care business on the side with his brother. (Dkt. No. 31-1 at p. 2).  On July 18, 2017, Plaintiff was caring for lawns in his neighborhood with his brother and a friend. (*See* Declaration of Marlin Gipson, hereinafter "Exhibit A" at ¶ 2).  Plaintiff had just finished mowing a neighbor's backyard, and his brother was still edging the front lawn, when a constable approached him. (*Id.* at ¶ 3).  The constable asked Plaintiff's name and age and Plaintiff told him.  (*Id.* at ¶ 4). Plaintiff was only a teenager, (19), at the time. (*Id.*).  The constable asked what Plaintiff was doing, even though he saw all the lawn equipment and Plaintiff's brother actively working on the lawn when he arrived. *Id.* Plaintiff told him that he was taking care of the lawns of his neighbors and showed him his business card. (*Id.*).

The constable then asked Plaintiff for identification, and Plaintiff informed him that he did not have any on him. Plaintiff then left the scene and walked home. (*Id.* at ¶ 5). A second constable followed Plaintiff home and again asked to see his identification. (*Id.* at ¶ 6).  Plaintiff told him that he did not have identification, he had not done anything wrong, and that the constable was not permitted to enter his house. (*Id.* at ¶ 6). Plaintiff then went inside his home and locked the front door. (*Id.*) Plaintiff "clearly told them they could not come into my house." (*Id.* at ¶ 7).

Plaintiff then went upstairs to his mother's room and shortly thereafter heard a commotion downstairs. (Id. at ¶ 8).  From what Plaintiff understands, several constables arrived at his house and tried to kick down the door.  (*Id.*).  Plaintiff's sister, who was only sixteen years old at the time (also

just a teenager), got scared and opened the door, and then the four constables entered Plaintiff's home. (*Id.*). Soon thereafter, body camera video evidence shows the constables at the bottom of the stairs with the police dog. (*See* Exhibit 4 to Defendant's Motion, hereinafter "body camera audio/video"). The body camera audio/video evidence is three minutes and three seconds long and corroborates Plaintiff's factual allegations.

When the video begins, it is impossible to hear what the constables are saying because the dog is barking and there is yelling. While Defendant Jones claims that he gave "loud verbal announcements that I was a police officer, there was a K-9, and if Gipson did not surrender, the dog would find and bite him," (Dkt. 77-1 at ¶ 10), it is clear from body camera audio/video that it would have been impossible for Plaintiff to hear this upstairs with all the noise. Indeed, Plaintiff states "I never heard the Defendant Jones give me any warnings whatsoever that he had a police dog with him and I needed to come out or I could be bitten." (Exhibit A at ¶ 9). Plaintiff explains that "[w]hen the officers were downstairs, all I heard was yelling and the dog barking loudly. It would have been impossible for me to hear any warning at this time." (Exhibit A, at ¶ 9). However, when Defendants came upstairs, it was quiet and Plaintiff would have been able to hear the warning at that time, but Defendant Jones failed to give any warnings at that time. (*Id.* at ¶ 10).

When the Defendants enter the closet where Plaintiff was, we hear Defendant Jones tell the police dog to "get him" and Plaintiff immediately stands still, hand up and palms out stating "I don't have nothing, please don't let him bite me." (body camera audio/video at 1:30). Plaintiff kept his hands up. From the audio/video evidence, we can hear the constables instruct Plaintiff <u>no less than seven times to "put your hands up" or "put them up"</u>. (body camera audio/video at 1:27-2:04). Plaintiff remembers that "I repeatedly heard 'put your hands up,' and that seemed the best option so that is what I did." (Exhibit A at ¶ 13). Indeed, the last time the instruction to "put your hands up" is given is less than a second before Plaintiff is tased. (*Id.*).

Plaintiff has stated that during this time he stayed completely still, and never looked at the shelves behind him because he did not want to take his eyes off of the police dog. (*Id.* at ¶ 14). Plaintiff never turned or moved his body because he was petrified the police dog was going to bite him. (Exhibit A at ¶ 14). Defendant Jones stated that he "did not see Gipson's actions immediately proceeding [ ] Deputy Guillen's decisions to apply force." (Dkt. No. 77-1).  Defendant Guillen now claims that he thought Plaintiff was possibly turning towards the shelf to grab a weapon. (Dkt. No. 77-2 at ¶ 6).  Yet, Defendant Jones did not witness any movement from Plaintiff, (Dkt. No. 77-1 at ¶ 13), and none of the constables ever yelled "weapon." (*See e.g.,* body camera audio/video). The body camera audio/video evidence also shows a shelf with nowhere a weapon could have been hidden (body camera audio/video at 1:37).  Even though Defendants claim that Plaintiff was still a threat and could have grabbed the "weapon" when he was laying on the ground, none of the four constables present in the closet ever communicated this and none of them looked for the weapon and importantly, Defendant Guillen never said anything to his fellow constables that he thought there was a weapon. (*Id.*).

Unfortunately, at this point the body camera was not pointed at Plaintiff, but rather to the side so it was intentionally not recording what was happening.  Plaintiff cowered from the police dog when Defendant Guillen tased him in the back. (Exhibit A at ¶ 16).  From the Taser Log produced by Defendants, this first time Plaintiff was actively tased it was for seven seconds. (*See* Exhibit 3 to Defendant's Motion, Dkt. No. 77-3). From the effects of the taser, Plaintiff immediately fell to the floor on his side and the police dog gripped Plaintiff's arm, keeping Plaintiff's arm within its teeth without letting go. (Exhibit A at ¶ 16). Defendant Jones did not attempt to get the police dog to release Plaintiff's arm, and instead Plaintiff repeatedly heard him praise the police dog and say "good boy, good boy." (Exhibit A at ¶ 17; body camera audio/video at 2:08-2:10).

At this time, Plaintiff was laying on the ground, cornered in the closet, surrounded by four constables, with his arm being bitten by the police dog. (Exhibit A at ¶ 19).  Plaintiff was in a lot of pain, but he also could not move due to being tased and could not get his arms behind his back due to being numb from the taser, and having the dog biting his arm. (*Id.* at ¶ 18).  Defendant Jones did not order the police dog to release Plaintiff, and instead, Defendant Guillen tased Plaintiff two more times – actively tasing him for ten seconds. (Dkt. No. 77-3; Exhibit A at ¶ 20).  Plaintiff was in an immense amount of pain and begging the Defendants to stop, and inexplicably he heard them keep yelling "stop resisting". (Exhibit A at ¶ 19- 20).  Plaintiff was "stiff as a board and could not move any part of my body." (*Id.*).  Plaintiff remembers that he was then handcuffed, and even after he was handcuffed and on the ground, he was kicked in the back and the back of the head several times. (Exhibit A at ¶ 21) (body camera audio/video at 3:01).  This kicking is seen on the body camera evidence as once Plaintiff is handcuffed, the constable with the body camera turns back to begin recording again. (body camera audio/video at 3:01). In total, the body camera was curiously not recording any of the officers' actions from 1:39-2:44.  Once Plaintiff was handcuffed and being removed from the closet, none of the constables checked any part of the closet for a weapon. (*Id.* at ¶ 23); (body camera audio/video).

Plaintiff was then brought downstairs and into the police car. (*Id.* at ¶ 24).  Defendants also took pictures of Plaintiff's injuries from the police dog. (*See e.g,* Exhibit B, Exhibit C and Exhibit D). He was brought to the hospital where he waited for more than thirty minutes bleeding profusely and in pain and he was then handcuffed to a bed. (*Id.* at ¶ 25, 26) (*See* Exhibit E, photograph of Plaintiff at the hospital). After he was finished at the hospital, he was taken to the jail where he was held overnight even though he made bond almost immediately. (Exhibit A at ¶ 28). He was in pain the entire time and kept asking somebody to help him. (*Id.*).  Plaintiff's arm still hurts today, it itches constantly, and he still has a scar. (*Id.* at ¶ 29).  Plaintiff was charged with failure to provide

identification and evading arrest, but all charges were later dropped for insufficient evidence. (Dkt. No. 31-1 at ¶ 26).  Plaintiff received a bill for his hospital visit. (*Id.* at ¶ 24).

### III.  <u>STANDARD OF REVIEW</u>

Under Federal Rule of Civil Procedure 56, summary judgment is only appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  When making this determination, the court should "disregard all evidence favorable to the moving party that the jury is required to believe. " *Orr v. Copeland,* 844 F.3d 484, 490 (5th Cir. 2016) (citing *Moore v. Willis Indep. Sch. Dist.,* 233 F.3d 871, 874 (5th Cir. 2000)).   "A fact is material if it could affect the outcome of the lawsuit, and a dispute about a material fact is genuine if the evidence is such that a reasonable jury could find for the non-moving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *McInnis v. Alamo Community College Dist*., 207 F.3d 276, 279 (5th Cir. 2000). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc*., 402 F.3d 536, 540 (5th Cir. 2005). "The court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion."  *Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1263 (5th Cir. 1991)*; *see also Laxton v. Gap Inc.*, 333 F.3d 572 (5th Cir. 2003) ("We must disregard evidence favorable to the moving party that the jury is not required to believe").

When analyzing a qualified immunity claim, a "good faith" assertion of qualified immunity alters this burden of proof, shifting it to plaintiff to show that the defense is not available. *Orr,* 844 F.3d at 490. In order to do this, a plaintiff must just "identify specific evidence in the summary judgment record demonstrating that there is a material fact issue concerning the essential elements of

its case." *Forsyth v. Barr,* 19 F.3d 1527, 1433 (5th Cir. 1994). Even on a summary judgment motion, the court will give greater weight to the "evidence from the video recordings taken at the scene." *Newman v. Geudry,* 703 F.3d 757, 761 (5th Cir. 2012) (internal citations omitted). If one of the party's description of the facts is discredited by the record, the court should view "the facts in the light depicted by the videotape." *Id.*

## IV.   LEGAL ARGUMENT

**A.   Defendants Have Not Met Their Burden of Proving Plaintiff's Claims are Time-Barred**

### 1.   Defendants Waived Any Statute of Limitations Affirmative Defense

It is black letter law that an affirmative statute of limitations defense must be raised in the Defendants' pleadings or else it is forfeited and excluded from litigation. Rule 8(c) of the Federal Rules of Civil Procedure unambiguously sets out that in the first responsive pleading "a party must affirmatively state any avoidance or affirmative defense, including: … statute of limitations." Fed. R. Civ. P. 8(c)1. The Supreme Court further clearly stated that "[o]rdinarily in civil litigation, a statutory time limitation is forfeited if not raised in a defendant's answer or in an amendment thereto." *Wood v. Milyard*, 566 U.S. 463, 470, 132 S. Ct. 1826, 1832, 182 L. Ed. 2d 733 (2012) (citing *Day v. McDonough*, 547 U.S. 198, 202, 126 S. Ct. 1675, 1679, 164 L. Ed. 2d 376 (2006)). Once the affirmative defense has been forfeited, it is "excluded from the case." *Id* at 470 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1278, pp. 644–645 (3d ed. 2004)).

Defendants brought a Motion to Dismiss as their first pleading nearly a year ago. (Dkt. No. 38).  Defendants argued to the merits of Plaintiff's Section 1983 claims, but never raised a affirmative statute of limitations defense.  Plaintiff filed a Second Amended Complaint. (Dkt. No. 31-1).  In response, Defendants filed a Motion to Dismiss and again failed to raise an affirmative statute of limitations defense. (Dkt. No. 46). Defendants have therefore waived any possible statute of limitations defense that they may have. *See e.g. Wood v. Milyard*, 566 U.S. 463, 470, 132 S. Ct. 1826,

1832, 182 L. Ed. 2d 733 (2012) (citing *Day v. McDonough*, 547 U.S. 198, 202, 126 S. Ct. 1675, 1679, 164 L. Ed. 2d 376 (2006)). Nor is this case in its "infancy" making it a "pragmatically sufficient time" for Defendants to surprise Plaintiff with their affirmative defense. *See e.g., U.S. ex rel. Bias v. Tangipahoa Par. Sch. Bd.,* 816 F.3d 315, 322 (5th Cir. 2016).

### 2. Even Assuming Defendants Have Not Waived Their Affirmative Defense, Plaintiff's Claims are Timely

Defendants do not claim that Plaintiff did not file his complaint timely, but rather that Plaintiff did not name them specifically as defendants within the statute of limitations. However, the original complaint "concerned the exact same conduct, transaction or occurrence," and therefore the amendment to include Defendants is timely. *McBroom v. Payne*, 2010 WL 3942010, at *4 (S.D. Miss. Oct. 6, 2010). Further, Defendants admit that immediately after Plaintiff learned of the identifies of Defendants, they filed their Amended Complaint include them by name: "Prior to the filing of the First Amended Complaint, Harris County produced to Plaintiff incident reports describing the roles of each of the deputies in the incident that makes the basis of this lawsuit. Plaintiff utilized said information and changed defendants John Does to the named deputy defendants in this case." (Dkt. No. 46, at fn. 3).

Plaintiff gave effective notice to the Defendants in this case who "should have known" that they were the proper Defendants in this lawsuit. Defendants point to two Fifth Circuit cases where it was held that Plaintiffs were not able to relate an amended complaint back where the identities of John Doe officers were later determined. *See Winzer v. Kaufman County,* 916 F.3d 464, 471 (5th Cir. 2019); *Jacobsen v. Osborne*, 133 F.3d 315, 317 (5th Cir. 1998). Each of these cases, however, concern instances where the Plaintiffs either had knowledge of the identities of the officers but failed to name them, as was the case in *Jacobsen*, or failed to take diligent steps to find their identities before amending, as was the case in *Winzer*. Here, Plaintiff has made every effort to identify the officers as quickly as possible and amended his complaint as soon as the identities were known. The cause for

delay in this case was purely the refusal of the original named Defendants to provide the identities of the officers involved. At all times, Defendants knew the actual identities of the "John Does." (All Defendants are represented by the same counsel and the officers were employed by the original Defendants).

Even if the Plaintiff's amended complaint cannot be said to relate back, the relevant statute of limitations should be equitably tolled in this case because the statute of limitations issues have only arisen due to the actions of the Defendants themselves. "The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable." *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir.1995) (citing *Burnett v. N.Y.* Cent. R.R., 380 U.S. 424, 428, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965)). The strict application of the statute of limitations here would create perverse incentives for Defendants – encouraging named Defendants to conceal the identities of relevant parties for as long as possible so as to let the statute pass on otherwise potentially viable claims. The Defendants' argument here runs headlong into "the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550, 130 S. Ct. 2485, 2494, 177 L. Ed. 2d 48 (2010) (citing Advisory Committee's 1966 Notes 122; 3 Moore's Federal Practice §§ 15.02[1], 15.19[3][a] (3d ed.2009)). Defendants' statute of limitations affirmative defense fails even if it has not been forfeited.

**B.**   <u>**Defendants' Conduct Should be Analyzed Collectively**</u>

As recognized by this Court on Defendants' denied Motion to Dismiss, "where officers work together to effectuate an arrest, federal district courts frequently analyze assertions of qualified immunity concurrently as to all arresting officers." *Sinegal v. City of El Paso,* 414 F.Supp.3d 995, 1004 (W.D. Tex. 2019); (Dkt. No. 63 at p. 7).  Defendants should only be analyzed separately when they have been "alleged to have participated in distinct ways." *Pena v City of Rio Grande City,* 879

F.3d 613, 6199 (5th Cir. 2018) (decided after *Meadows,* precedential case cited by Defendants at p. 11).

As it is undisputed by Defendants that they in fact worked together to effectuate Plaintiff's arrest, their claims should be analyzed concurrently. However, even if the Court analyzes the conduct of each Defendant separately, they each individually used unreasonable excessive force against Plaintiff, as discussed *infra* at length.

**C.      Plaintiff Have Alleged Sufficient Material Issues of Fact Regarding Defendants' Qualified Immunity Defense Requiring Denial of Summary Judgment**

Qualified immunity is designed to protect government officials in "limited circumstances" when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hathaway v. Bazany,* 507 F.3d 312, 320 (5th Cir. 2007). Whether a defendant is entitled to qualified immunity is a two-fold analysis of: (1) whether a constitutional right was violated on the facts alleged, and (2) whether the right in question was clearly established at the time of the violation such that a reasonable person would have known of it. *See Flores v. City of Palacis,* 381 F.3d 391, 395 (5th Cir. 2004).

The facts establish that Defendants' excessive force against Plaintiff violated his Fourth Amendment rights, and that any reasonable person in Defendants' situation should have known that their actions were in violation of Plaintiff's constitutional rights, thereby disqualifying summary adjudication of Defendants' qualified immunity defense.

**1.      Defendants' Actions Violated Plaintiff's Constitutional Rights**

A plaintiff asserting an excessive force claim under § 1983 must show he "suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force was objectively unreasonable." *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). Defendants claim that Plaintiff's Fourth Amendment right to be free from excessive force was not violated because the force was not objectively unreasonable. Defendants are wrong.

While it is true as Defendants allege that Fourth Amendment jurisprudence recognizes that government officers' right to make an arrest or investigatory stop necessarily carries with it the right to use "some degree of physical coercion or threat to effect it," it is not a blanket allowance for the use of force. *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 1871-72 (1989) (internal citations omitted) (emphasis added). To determine whether the use of force was objectively reasonable, courts must "balance the amount of force used against the need for force." *Flores v. City of Palacios,* 381 F.3d 391, 399 (5th Cir. 2004). Therefore, courts should pay careful attention to the facts and circumstances of each particular case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (identifying what have come to be known as the "*Graham* factors"); *Newman v. Guedry,* 703 F.3d 757, 761 (5th Cir. 2012).

Importantly, Fifth Circuit precedence is clear that using a taser and a police dog against a detainee who is not actively resisting, does not have a weapon, and is not suspected of a serious offense constitutes a clearly established use of excessive force. *See Cooper v. Brown,* 844 F.3d 517, 525 (5th Cir. 2016) (allowing police dog to bite plaintiff who was not attempting to resist arrest or flee was objectively unreasonable); *Newman v. Guedry*, 703 F.3d 757, 764 (5th Cir. 2012) (denying summary judgment and accepting as true plaintiff's testimony that "he committed no crime, posed no threat to anyone's safety, and did not resist the officers or fail to comply with a command").

Applying these factors to the force used against Plaintiff, there are critical issues of fact whether the force used was unreasonable. Plaintiff was not resisting arrest, he did not have a weapon, nor does the evidence support the allegation that he was reaching for one, and he was not suspected of any offense, certainly not a serious offense. Defendants' arguments to the contrary are refuted by the factual evidence and the legal authority.

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

a.   Plaintiff Committed No Crime

When Plaintiff was initially approached by a constable while mowing his neighbor's lawn as part of his business, he told the constable his name and age. (Exhibit A at ¶ 3).  Defendants have never given any legitimate reason why Plaintiff was initially approached, nor why he was followed home after giving his name and age and informing the constable he did not have any identification on him.  Nor have Defendants offered any support as to why they entered his home with four constables and a police dog after Plaintiff unequivocally stated said he was not giving them consent to enter his home. (Exhibit A at ¶ 7).

Defendants' reliance on *Escobar v. Montee* in support of their actions because Plaintiff's crime was 'severe' is incomprehensible.  *Escobar v. Montee,* 895 F.3d 387 (5th Cir. 2018).  The plaintiff in *Escobar* had just physically assaulted his wife and fled from the police with a weapon. *Id.* at 390.  While chasing the suspect, the police were informed by his mother that "they would have to kill him to get him." *Id.* When the suspect was found – after a search using a helicopter – he was found in a neighbor's yard where he had been hiding from the police for over twenty minutes. *Id.* Here, Plaintiff committed no crime, certainly not a violent one; he did not have a weapon; and the police were neither informed that he was armed and dangerous, nor that they would have to kill Plaintiff to get him to comply. *Id.* The fact that Plaintiff did not commit a crime, and certainly not a serious or violent crime, indicates that there are critical issues of material fact remaining whether Defendants' use of force was unreasonable.

b.   At a Minimum There are Material Questions of Fact Regarding Whether Plaintiff Posed an Immediate Threat

Defendants claim that Plaintiff posed an immediate threat because he was in his closet and Defendant Guillen claims that Plaintiff looked like he was going to reach for a weapon. This is inapposite to the factual evidence. Yet again, Defendants' reliance on *Escobar* is irrelevant, because in *Escobar* the plaintiff had just physically assaulted his wife, undisputedly had a weapon, and the

officers were told he was dangerous and that they would have to kill him to bring him into custody. *Escobar,* 895 F.3d at 390.

Defendant Guillen claims that Plaintiff "kept glancing over his shoulder looking behind him toward the top shelf of the closet," and that he saw Gipson twist toward the shelf. (Dkt. No. 77-2). Yet, Defendant Jones did not see this, (Dkt. No. 77-1) and Plaintiff denies this (Exhibit A at ¶ 14). Further at no point did either Defendant yell "weapon," nor do anything to communicate to the other two constables or each other that they suspected Plaintiff may reach for a weapon, and nor did they ever check to see if there was a weapon on the shelf where Defendant Guillen claims Plaintiff was "glancing" at after Plaintiff was in handcuffs or anytime before or after. (body camera video/audio; Exhibit A at ¶ 23). Plaintiff also refutes this unfounded allegation and states that "I never took my eyes off the dog, because I was scared it was going to bite me. I never turned towards the shelf and never turned my body at all." (Exhibit A at ¶ 23). This is also verified by the video evidence we can see. (body camera video/audio).

Plaintiff did not pose an immediate threat. In *Cooper v. Brown,* the court found that "no reasonable officer could conclude that [plaintiff] posed an immediate threat" where the plaintiff "was not suspected of committing a violent offense," the officers were not warned the plaintiff might be violent, and the officers could see the plaintiff's hands and therefore knew he did not have a weapon. *Cooper,* 844 F.3d at 522-523. Similarly, in *Newman v. Geudry,* the court found that the officers theory that they were preventing serious injury or death was "severely overwrought," where the plaintiff did not have a weapon, the video evidence did not show the plaintiff reaching for a weapon, and "the officers did not try to warn each other or the other officers that [plaintiff] had a weapon, which might be expected if either officer truly thought that at the time." *Newman,* 703 F.3d at 762.

Here, Plaintiff had not committed a violent crime, he merely did not have identification when he was stopped for no reason[2] – and all charges against him were dropped. Defendant Guillen's claim that he thought Plaintiff may be reaching for a weapon is contradicted by several pieces of evidence: Plaintiff's declaration which refutes this; the video camera evidence we do have does not show it (again, it is unfortunate that the video camera was turned away from the events for over a minute when Plaintiff was tased and attacked by the dog); Defendant Guillen, Defendant Jones, nor any of the other constables ever tried to warn the other officers that any of them thought that Plaintiff had a gun, which the *Newman* court stated would be expected; and after the Plaintiff was on the ground and handcuffed, neither Defendant nor the other two constables checked to see if there was in fact a weapon on the shelf.  It is inconceivable that Defendants would not take a second to look if they truly believed there to be a weapon.  Therefore, there are material issues of fact regarding this *Graham* factor as well.

c.    <u>At a Minimum There are Material Questions of Fact Regarding Whether Plaintiff was Resisting Arrest</u>

Defendants claim that Plaintiff was "attempting to evade arrest by flight and was actively resisting arrest." (Dkt. No. 77 at p. 13).  This is also unfounded and contradicted by the evidence. Plaintiff was cornered in a small closet by four constables and a police dog, with his hands in the air, standing still.  As seen on Defendants' own video, and as submitted by Plaintiff's own declaration, Plaintiff immediately complied with the constables' instructions and put his hands up.  (body camera audio/video at 1:30; Exhibit A at ¶ 13).  Defendants' body camera video shows many different

---

[2] Defendants' new allegations that they were investigating Plaintiff for "casing homes in preparation of committing the felony crime of burglary of a habitation," is completely without merit. (Dkt. No. 77 at p. 11). Plaintiff was <u>mowing lawns surrounded by lawn maintenance equipment</u>. Plaintiff told Deputy Cates his name and age, showed him his business card, and told him exactly what he was doing. (Exhibit A at ¶ 1-6).

conflicting instructions being yelled at Plaintiff, but "put your hands up" is shouted at least seven times that is clearly audible. (body camera audio/video evidence at 1:27-2:04).

"We have consistently held that a suspect does not pose an immediate threat where he unambiguously surrenders, for example, by placing his hands in the air and complying with the officers' commands." *Escobar v. Montee,* 895 F.3d 387, 394 (5th Cir. 2018) (emphasis added). Plaintiff was not resisting arrest. *See e.g., Cooper v. Brown,* 844 F.3d 517, 522-523 (5th Cir. 2016) (finding that no reasonable officer could believe that [plaintiff] was actively resisting arrest when he was actually complying.); *Newman v. Guedry,* 703 F.3d 757, 762 (5th Cir. 2012) (finding that Plaintiff struggling and even "pushing himself off the car and back onto the officers" was not active resistance); *Darden v. City of Forth Worth, Texas,* 880 F.3d 722, 732 (5th Cir. 2018) (finding that there were material issues of fact regarding defendant's qualified immunity defense where the plaintiff was in his residence and put his hands in the air and was therefore not resisting arrest when he was tasered by the defendant).  Importantly, the *Darden* court recognized that while a jury may ultimately find that the defendant's actions were reasonable, "on the record before us, there are genuine issues of material fact as whether [the plaintiff] was actively resisting arrest and whether the force [the defendant] used was clearly excessive and clearly unreasonable" in denying summary judgment. *Id.* at 732.  The same applies here.

Plaintiff cornered in a closet by four constables and was complying with the command he heard multiple times: "put your hands up." (Exhibit A at ¶ 13).  There are material issues of fact regarding Defendants' claims that Plaintiff was "actively resisting" arrest.  Nor can Defendants claim that he continued to fail to comply when he was laying on the ground after being tased, immobile, with a police dog attacking his arm.  *See Cooper,* 844 F.3d at 523 (finding that plaintiff's failure to comply with the officer's order to raise his hands cannot be characterized as "active resistance" when the dog was latched to his body at the time).  Defendant Jones allowed the police dog to continue to

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

bite Plaintiff for thirty seconds, causing serious lasting injury to Plaintiff's arm. (body camera audio/video; Exhibit B, Exhibit C, Exhibit D).  Rather than pulling the police dog off Plaintiff immediately after the dog attacking Plaintiff, Defendant Jones is heard yelling "good boy, good boy." (Exhibit A at ¶ 17; body camera audio/video at 2:08-2:10).  Plaintiff was repeatedly tased and was begging the Defendants to stop and was "stiff as a board and could not move any part of my body." (Exhibit A at ¶ 20).  Plaintiff is audibly screaming and crying in pain for more than thirty seconds. (body camera audio/video at 2:20-2:50).  Therefore, there are material issues of fact regarding this *Graham* factor as well.

### 2.      Plaintiff's Rights Were Clearly Established Under the Law

In order to establish that Plaintiff's rights were clearly established, Plaintiff must show that "the contours of that right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Flores v. City of Palacios,* 381 F.3d 391, 399-400 (5th Cir. 2004) (citing *Anderson v. Creighton,* 483 U.S. 635, 640- 107 S.Ct. 3034 (1987)).  The central concept is "fair warning," in so much that so long as the "prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights," Defendants are deemed to have understood that their conduct was in violation of Plaintiff's rights. *Cooper,* 844 F.3d at 524 (internal citations omitted).  In an obvious case (as Plaintiffs argue this is), "the *Graham* excessive-force factors themselves 'can clearly establish the answer, even without a body of relevant case law." *Id.*  However here, both the *Graham* factors and the relevant case law conclude that Plaintiff's rights were clearly established under the law.

As this Court recognized on Defendants' Motion to Dismiss, "the Fifth Circuit has held that using a taser and a police dog against a detainee who is not actively resisting, does not have a weapon, and is not suspected of a serious offense constitutes a clearly established use of excessive force."

(Dkt. No. 63 at p. 9).  This is not "at a high level of generality" as Defendants attempt to argue (Dkt. No. 77 at p. 16) but is clearly specifically applicable to the present set of facts.

Like the Plaintiff in *Cooper v. Brown,* here too Plaintiff's rights were clearly established as to both Defendants' actions – either together or separately. It is established that the use of taser "can result in a constitutional depravation." *Samples v. Vadzemnieks,* 900 F.3d 655, 661 (5th Cir. 2018); *Ramirez v. Martinez,* 716 F.3d 369, 379 (5th Cir. 2013) (denying summary judgment where the plaintiff posed no threat was tased twice); *Newman,* 703 F.3d at 762 (finding that it was objectively unreasonable to tase an arrestee where the video evidence did not show the plaintiff fleeing or resisting, did not show him reaching into his waistband for a weapon like defendant claimed, and the officers never warned each other of the alleged weapon).  It is also established that the use of a police dog may also constitute a violation of an established right. *Cooper v. Brown,* 844 F.3d 517, 525 (5th Cir. 2016) (allowing police dog to bite plaintiff when he was not resisting arrest or trying to flee was objectively unreasonable); *Clark v. Massengill,* 641 F.App'x 418, 421 (5th Cir. 2016) (finding that it was clearly established that tasing and repeatedly biting the plaintiff after he submitted was unconstitutional excessive force).

Plaintiff's rights were clearly established. "Our caselaw makes clear that once an arrestee stops resisting, the degree of force an officer can employ is reduced." *Bush v. Strain,* 513 F.3d 492, 502 (5th Cir. 2008) (holding that it was objectively unreasonable to slam an arrestee's face into a nearby vehicle when the arrestee was not resisting arrest or attempting to flee). Therefore, since Plaintiff was "not attempting to resist or flee and [Defendants] had no reason to think that he posed an immediate threat," Defendants had "fair warning that subjecting a complaint and non-threatening arrestee" to a dog attack and tasing was objectively unreasonable. *See Cooper,* 844 F.3d at 523.

Notwithstanding the fact that Defendants' actions violated clearly established common law, they also were in contradiction with their employers' own policies – which mirror and reflect the

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

clearly established law. *See* Department Canine Policy, HCF401-427, attached hereto Exhibit F, and Department Use of Force Policy, HCF435-447, attached hereto as Exhibit G.

The Canine Policy states that Plaintiff should have been warned three times that the police dog may or will bite him if he does not immediately comply. Exhibit F at p. 4. Plaintiff never heard any warning. (Exhibit A at ¶ 9, 11)  Second, the Canine Policy provides that the police dog should only be used if "the individual poses an immediate threat of violence or serious harm; the individual is physically resisting arrest; the individual is hiding where entry by law enforcement would pose a threat to the officers or public;" and a limited catch-all that "a standard of reasonableness shall be used for the decision to use a police canine in view of the totality of the circumstances." *Id.*  at p. 3 (emphasis added).  The Canine Policy also provides that the police dog handler should analyze the (1) age of the suspect; (2) the nature and seriousness of the offense; (3) any potential danger to suspected officers involved; and (4) potential danger to the public, a police officer or other individual. (Exhibit F at p. 3-4).

Quite similarly, the Use of Force Policy states that the Taser shall only be used "to control a dangerous or violent suspect when deadly force does not appear to be justified and/or necessary; or attempts to subdue the suspect by other conventional tactics have been, or will likely be, ineffective in the situation at hand; or there is a reasonable expectation that it will be unsafe for Deputies to approach within the contact range of the subject." Exhibit G at p. 8 (emphasis added).

Given the established law and the language in Defendants' employment policies, there is no credible argument that a reasonable official in Defendants' place would not understand that attacking a nineteen-year-old boy with a dog for thirty seconds and tasing him three times, in his home, for merely not having or showing identification, while his hands were up and visible, complying with orders and begging for mercy, was in violation of established law.

Finally, Defendants' attempts to argue that there is legal precedence justifying Defendants' actions fail. First, Defendants rely on *Shumpert v. City of Tupelo* in support of their argument that Defendant Jones could not have known that his actions were unconstitutional. *Shumpert v City of Tulepo,* 905 F.3d 315, 323 (5th Cir. 2018). First and foremost, the *Shumpert* Court explicitly states that the actions of the officer took place prior to the Court's *Cooper v. Brown* decision which is instructive and directly applicable here. *Id.* at 321-322. Second, the court found that "it was undisputed that Shumpert was violently resisting arrest and that [the defendant] did not know whether he was armed," and the defendants ceased using any force when the plaintiff was subdued. *Id.* None of these factors are present here. It is certainly not "undisputed that Plaintiff was violently resisting arrest," but rather it is undisputed that Plaintiff was standing with his hands raised, following the command he heard no less than seven times. Nor may Defendant Jones or Defendant Guillen claim that Plaintiff was non-compliant and physically resisting arrest, when he was laying on the ground after being tased, with the police dog attacking his arm, to justify that he did not know his actions were unreasonable. (Dkt. No. 77 at p. 18). The evidence and law refute these allegations completely.

Defendant Guillen claims that because Plaintiff "refused to comply with demands" his actions did not violate the law. (Dkt. No. 77 at p. 19). As is clearly established, Plaintiff followed the command to "put his hands up." Plaintiff was not resisting arrest; he was following commands. Defendant Guillen's use of the taser – without any verbal warning as required by policy – to a non-resisting teenager, who had not committed a serious or violent crime, was objectively unreasonable.

## V.   CONCLUSION

For all the foregoing reasons, Plaintiff respectfully request the Court deny Defendants' Motion for Summary Judgment.

Dated: May 3, 2021                    Respectfully submitted,

                                      /s/ David W. Henderson
                                      Jay D. Ellwanger
                                      Texas State Bar No. 24036522
                                      jellwanger@equalrights.law
                                      David W. Henderson
                                      Texas State Bar No. 24032292
                                      dhenderson@equalrights.law
                                      Ellwanger Law LLLP
                                      8310-1 N. Capital of Texas Hwy, Ste. 190
                                      Austin, Texas 78731
                                      Telephone: (737) 808-2260
                                      Facsimile:  (737) 808-2262

                                      S. Lee Merritt (*pro hac vice* to be filed)
                                      PA Bar No. 314891
                                      Merritt Law Firm LLC
                                      1910 Pacific Ave. Suite 8000
                                      Dallas, Texas 75201
                                      slm@merrittatlaw.com

                                      **Counsel for Plaintiff**

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
                                      MOTION FOR SUMMARY JUDGMENT**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 3, 2021 a true and correct copy of the foregoing document was served via CM/ECF on all counsel of record.

Date:   May 3, 2021

/s/ David W. Henderson

David W. Henderson

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**