# EXHIBIT G



# CONSTABLE ALAN ROSEN
## HARRIS COUNTY CONSTABLE'S OFFICE
## Precinct One

www.pct1constable.net

| SUBJECT: | POLICY #: | # of Pages |
|---|---|---|
| USE OF FORCE | 501 | 14 |

## I.    Policy

The actions of all employees of Harris County Constable Precinct One Office shall fully comply with all applicable state federal laws.

A.    Policy Concerning Use of Force in Police Actions are governed by the following:

   1.    Administrative Duty: Job tasks that do not require an employee to exercise arrest authority as a primary function of his/her position. Employees assigned to administrative duty shall report for duty wearing civilian attire and may not operate a marked patrol vehicle.

   2.    Administrative Leave: Employee's absence from duty with full pay and benefits.

   3.    Bodily injury: Physical pain, illness, or any impairment of physical condition.

   4.    Deadly Force: Force that is intended or known by the person to cause, or in the manner of its use or intended use, is capable of causing death or serious bodily injury.

   5.    Fleeing Juveniles: The rules pertaining to self-defense are equally applicable to juveniles, as a suspect should never be considered less dangerous merely because of youth. However, in the event deputies are pursuing a fleeing felony offender believed to be a juvenile, they shall not use deadly force even though the suspect ignores the deputies' commands to halt.

   6.    Known Felony Offenders: Deadly force must not be used against persons who are running away to escape arrest except under compelling circumstances in felony cases. For example, if a deputy actually sees a person commit a serious felony such as murder, he/she may use deadly force to prevent escape if the offender presents a continuing danger of imminent serious bodily injury or death to others and cannot be apprehended by any other reasonable means.



# CONSTABLE ALAN ROSEN
## HARRIS COUNTY CONSTABLE'S OFFICE
### Precinct One

www.pct1constable.net

| SUBJECT: | POLICY #: | # of Pages |
|---|---|---|
| **USE OF FORCE** | **501** | **14** |

7.  Legal Limitations: Deputies may use force and/or deadly force only under certain lawful or authorized situations. The Texas Penal Code, Sections 9.51 and 9.52, delineate the Texas Law of justifiable homicide.

8.  Misdemeanants: A Deputy may not use deadly force to effect the arrest or prevent the escape if a person who has committed a misdemeanor. This restriction does not infringe upon a deputy's right of self-defense should he/she be attacked.

9.  Protection of General Public: Regardless of the nature of the crime or the legal justification for using deadly force against a suspect, deputies should remember that their basic responsibility is to protect the public. Deputies should be cautious when using deadly force under conditions that would subject bystanders to possible injury or death.

10. Reasonable Belief: A belief that would be held by an ordinary and prudent person in the same circumstances as the acting person.

11. Self Defense: A Deputy is entitled to use deadly force when it is necessary to save himself/herself, a citizen, another law enforcement officer, or a prisoner from death or serious harm. He/she is not permitted to use deadly force to protect himself/herself from assaults which are not likely to have serious results.

12. Suspected Felony Offenders: A Deputy shall not use deadly force against a person who is called upon to halt upon mere suspension, and who simply runs away to avoid arrest.

13. Warning shots: Warning shots shall not be fired.

14. No employee will hogtie (connecting hands to feet behind the back) a suspect.

B.  A Deputy is justified in using force against another when and to the degree the Deputy reasonably believes the force is immediately necessary to accomplish lawful objectives, and if:



# CONSTABLE ALAN ROSEN
## HARRIS COUNTY CONSTABLE'S OFFICE
## Precinct One

www.pct1constable.net

| SUBJECT: | POLICY #: | # of Pages |
|---|---|---|
| **USE OF FORCE** | **501** | **14** |

1. The Deputy reasonably believes the arrest or search is lawful, and/or;

2. The arrest or search is made under warrant and the Deputy reasonably believes the warrant is valid; and

3. Before using force, the Deputy states the purpose of arrest or search and identifies himself as a Deputy unless he/she reasonably believes the purpose and identity are already known by the person to be arrested.

C. Deadly Force:

Use of deadly force must be in accordance with all applicable State and Federal laws. A Deputy is justified in using deadly force against another when and to the degree the deputy reasonably believes the action is in defense of human life, including the deputy's own life, or in defense of any person in imminent danger of serious physical injury

D. Duty to Render Aid:

1. Deputies shall ensure that any person injured or believed to be injured as a result of the use of force, receives appropriate and timely first aid and/or professional medical attention.

2. A description of the injuries, or possible injuries, and the treatment administered shall be included in the appropriate Constable's Office report.

3. Whenever a subject has obvious injuries as a result of an employee's use of force, or complains of injuries as a result of an employee's use of force, the employee shall;

   a. Have the subject evaluated and/or treated by Emergency Medical Service personnel.

   b. Provide transport to an appropriate medical facility (hospital).



# CONSTABLE ALAN ROSEN
## HARRIS COUNTY CONSTABLE'S OFFICE
### Precinct One

www.pct1constable.net

| SUBJECT: | POLICY #: | # of Pages |
|---|---|---|
| **USE OF FORCE** | **501** | **14** |

    c.     Document the incident in an offense report.

E.    Reporting Use of Force:

    1.     The Constable's Office will examine all incidents wherein its personnel have applied force as defined herein to ensure that each event is properly documented and investigated for the following reasons:

        a.     To assure the community that the policies of the Constable's Office are followed.

        b.     To ensure proper and accurate documentation of the incident in the event of civil action being brought against the Constable's Office or the deputy.

        c.     To evaluate the training needs of the Constable's Office.

        Unauthorized or indiscriminate use of physical force may result in disciplinary action being taken against an employee.

    2.     All incidents involving the use of force in the following categories shall be documented in Constable's Office reports by the involved employee, reviewed by the immediate supervisor, and forwarded to the respective Division Commander:

        a.     Baton or other impact/ restraint device – when the person is forcibly restrained struck or jabbed.

        b.     Electronic Incapacitation Devices (EIDs) – deployment of TASER X26 System.

        c.     Striking – when a person is struck with an open or closed hand or any other object.

        d.     Chemical Weapon – OC Spray.

        e.     Canine – when suspect is or alleges to be injured.

        f.     Discharge of Firearm.



# CONSTABLE ALAN ROSEN

## HARRIS COUNTY CONSTABLE'S OFFICE

## Precinct One

www.pct1constable.net

| SUBJECT: | POLICY #: | # of Pages |
|---|---|---|
| **USE OF FORCE** | **501** | **14** |

    g.    Motor Vehicle.

    h.    Any object or instrument used to forcibly stop a person or motor vehicle.

    i.    Any employee's action that results in, or is alleged to have resulted in, any injury or death of another person.

    j.    Physical force – any action taken by an employee who has an eminent potential for injury or death to another person.

F.    Administrative Leave/Duty Status

    1.    Immediately following an employee's involvement in an incident wherein the use of force or other actions result in serious bodily injury or the death of any person, the Chief Deputy shall assign the employee to administrative leave or administrative duty status:

        a.    If it is determined that the employee will be placed on Administrative Leave, the employee's Assistant Chief shall prepare the appropriate documents for submission as required by payroll procedures.

        b.    If it is determined that the employee will be placed on Administrative Duty, the employee's Assistant Chief shall assign the employee to administrative duties.

    2.    While on administrative duty, the employee shall attend a post-incident debriefing with a Constable's Office approved counselor.

    3.    Assignment to administrative leave or administrative duty status is non-disciplinary and, as such, shall not result in the loss of any pay or employment benefit. Administrative duty is designated to:

        a.    Address the personal and emotional needs of the employee involved in the use of force, and

        b.    Assures the community that the facts surrounding the case are fully and professionally investigated.

    4.    Off-duty Employment:



**CONSTABLE ALAN ROSEN**

**HARRIS COUNTY CONSTABLE'S OFFICE**

**Precinct One**

www.pct1constable.net

| SUBJECT: | POLICY #: | # of Pages |
|---|---|---|
| **USE OF FORCE** | **501** | **14** |

An employee assigned to administrative leave or administrative duty status in accordance with this procedure, who wishes to engage in off-duty employment, shall submit a written request to the Chief Deputy. The Chief Deputy shall determine if the employee may engage in the requested off-duty employment and will notify the employee in writing.

G.   Use of Force Continuum:

Levels of force that a deputy may use to gain control over a subject are divided into the following categories:

1.   Deputy physical presence.

2.   Verbal direction/commands.

3.   Empty hand control.

4.   Soft empty hand control.

5.   Electronic Incapacitation device.

6.   Hard empty hand control (strikes).

7.   Intermediate weapons:

   a.   Soft intermediate weapons.

   b.   Hard empty intermediate weapons (strikes).

8.   Lethal Force.

H.   Levels of Force and Control:

1.   A Deputy is authorized to use only the necessary and reasonable amount of force to effect an arrest and deter any aggression or resistance on the part of any subject being arrested. The Deputy's actions will be guided by the offender's level of resistance as identified above.

# CONSTABLE ALAN ROSEN

## HARRIS COUNTY CONSTABLE'S OFFICE

### Precinct One

www.pct1constable.net

| SUBJECT: | POLICY #: | # of Pages |
|---|---|---|
| **USE OF FORCE** | **501** | **14** |

2. Once resistance is overcome or aggression is reduced, de-escalation should occur.

3. The Deputy must be able to articulate and document the level of resistance he or she encounters and the reasoning he/she uses for selecting a level of control in response.

4. The Deputy's reaction to resistance will be in one of the following categories:

   a. Verbal Direction: The situation may be defused by using good communication skills or verbal directions.

   b. Empty Hand Control: This action could be as subtle as gently directing a subject's movements, to more dynamic techniques strikes and kicks. This policy divides Empty Hand Control onto two categories, soft and hard.

      1) Soft: This level of control is designed to control primary low levels of resistance with a minimal risk of injury.

      2) Hard: This level of control is for high levels of defensive resistance, active aggression, or aggravated active aggression. These incidents could result in minor medical injuries.

   c. Intermediate Weapons:

      Approved impact weapons such as a baton can aid a Deputy in defending themselves and controlling offenders. Strikes should be delivered to major muscle groups if at all possible. Strikes to the head, neck, throat, groin, and clavicle shall be considered deadly force.

   d. Chemical Agents:

      Chemical agents approved by the Constable's Office can provide a means by which a deputy can defend himself or another from injury and a means of controlling an offender.

   e. Lethal Force:

      Any force that could cause death or serious bodily injury



# CONSTABLE ALAN ROSEN
## HARRIS COUNTY CONSTABLE'S OFFICE
### Precinct One

www.pct1constable.net

| SUBJECT: | POLICY #: | # of Pages |
|---|---|---|
| **USE OF FORCE** | **501** | **14** |

I. TASER / Conducted Electrical Weapon

Conducted Electrical Weapon (CEWs) are considered soft intermediate less lethal weapons and are not likely to result in death or serious physical injury. The Thomas A. Swift's Electric Rifle (TASER) X26 System is designed to result in temporary dysfunction without causing physical injury. The TASER X26 uses a 26-watt electrical signal to temporarily override the body's central nervous system and directly control skeletal muscles. This causes an uncontrollable contraction of the muscle tissue allowing the TASER X26 to temporarily debilitate a subject regardless of pain tolerance or mental focus.

The TASER X26 System is deployed as an additional law enforcement tool and it is not intended to replace firearms or self-defense techniques. It may be used to control a dangerous or violent suspect when deadly force does not appear to be justified and/or necessary; or attempts to subdue the suspect by other conventional tactics have been, or will likely be, ineffective in the situation at hand; or there is a reasonable expectation that it will be unsafe for Deputies to approach within the contact range of the subject.

J. Authorized Personnel and Training:

Only commissioned Deputies authorized by their Division Commander who have successfully completed a Constable's Office approved course of instruction are authorized to carry or use it.

1. Taser recertification will be conducted biennial (every two years) will take place at scheduled training sessions by the Taser Program Supervisor or designee.

2. Annual download of all Tasers will take place to ensure serviceability of deployed units.

3. At the re-certification the deputy's issued Taser will be inspected and serial numbers verified, In addition the inspector will ensure the deputies knowledge of the current use of force policy regarding this device and of the deputy's knowledge of operation.

4. Failure to complete required re-certification training for less lethal weapons will result in revocation of the employee's authorization to carry the weapon(s).



## CONSTABLE ALAN ROSEN
### HARRIS COUNTY CONSTABLE'S OFFICE
### Precinct One

www.pct1constable.net

| SUBJECT: | POLICY #: | # of Pages |
|---|---|---|
| **USE OF FORCE** | **501** | **14** |

K.      Authorized Conducted Electrical Weapon (CEWs):

Only the TASER X26 System issued by the Constable's Office or personally bought Taser X26 systems that are approved by the Taser Program Supervisor are authorized for use by Harris County Constable's Office Deputies. The use of personally owned electronic incapacitation devices or cartridges must be approved by the Taser Program Supervisor and must meet all other requirements of this policy.

Deputies shall be required to wear the TASER X26 when working, on duty or an off duty job, in uniform. This does not preclude the Deputy from wearing an additional type of less lethal weapon(s) while in uniform if the Deputy is trained and certified in their use. Plain-clothes Deputies are authorized to carry the TASER X26 in a concealed manner so as not to attract unwanted attention.

L.      TASER X26 System Deployment Procedures:

1.      Use verbal commands and point the laser sight at subject before firing. Before using the TASER X26, the Deputy shall, if practical, verbally warn the subject that the TASER X26 will be deployed if the subject does not cease his/her combative behavior and/or comply with the Deputy's commands.

2.      When the TASER X26 is going to be deployed, the user should announce "TASER, TASER, TASER." This shall provide other Deputies with a warning that the TASER X26 is about to be deployed and give notification to the suspect of imminent discharge.

3.      Have a second air cartridge present or a second TASER X26 ready to fire in case probes miss the target, a malfunction occurs, or an air cartridge is a defective.

4.      Require backup/arrest team (depending on situation).

5.      Aim at center of mass (just below) if possible. Watch for thick and/or loose clothing. If probes hit clothing, the electrical current can penetrate for a maximum of 2 ¼ inches away from skin. The TASER X26 shall not be aimed at and/or discharged at the eyes, genitals or face of a suspect.



# CONSTABLE ALAN ROSEN

## HARRIS COUNTY CONSTABLE'S OFFICE
### Precinct One

www.pct1constable.net

| SUBJECT: | POLICY #: | # of Pages |
|---|---|---|
| **USE OF FORCE** | **501** | **14** |

6.   Use cover and distance to ensure the officer's safety.

7.   If subject runs, Deputy(s) must run also to prevent TASER wires from breaking.

8.   Avoid use at locations that may endanger the subject if the subject falls to the ground as a result of the TASER X26 being deployed. Examples would include, but not limited to, slanted rooftops, ledges of tall buildings, tall fences or deep water. The Deputy deploying the TASER X26 is responsible for evaluating each situation on an individual basis.

9.   If two or more Deputies are involved when a TASER X26 is deployed, the Deputies shall make every effort to coordinate their actions to avoid miscommunication and/or jeopardizing their tactical situation.

10.   Deputies shall not use electronic incapacitation devices on subjects who are under physical restraint unless the subject is still violently resisting and lesser means of controlling the subject have failed.

11.   The Taser will be assigned to the deputy and will transfer with the deputy as long as his / her assignment is in the capacity of uniformed law enforcement (Patrol), Building Security, Warrants, and Mental Health Warrants, or at the discretion of the Taser Program Supervisor.

12.   The Taser Program Supervisor assigned to the Constable's Office will track the cartridge assignment and download capability of the Taser for deputies assigned to the department.

13.   The Taser Program Supervisor will track and monitor all Taser issued to deputy personnel. In addition, the Taser Program Supervisor will be responsible for the accuracy of training, all ordering and repairs of all county owned Taser equipment.

14.   Any deputy that is transferred to non-field positions, and / or terminated will immediately surrender their assigned Taser and cartridges to their Supervisor which will in turn return said equipment to the Taser program Supervisor for reissue.

M.   After Deployment Procedures:
A Deputy using a conducted electrical weapon (TASER X26) on a subject will ensure that a supervisor is notified of the incident as soon as practicable after deployment. A supervisor shall respond to the scene of any incident where a Deputy (on or off duty) deploys an conducted electrical weapon on a subject.



# CONSTABLE ALAN ROSEN
## HARRIS COUNTY CONSTABLE'S OFFICE
### Precinct One

www.pct1constable.net

| SUBJECT: | POLICY #: | # of Pages |
|---|---|---|
| **USE OF FORCE** | **501** | **14** |

Persons who have been subjected to the TASER X26 shall be treated as follows:

1.  Deputies shall use the two finger method for removing the probes. Since the probes may have blood on them (biohazard), the Deputy(s) shall wear protective gloves when handling. The wires shall be wound around the cartridge. The used probes will be placed in the spent cartridge container. The probes, cartridge, and a few of the Anti-Felon Identification Tag papers shall be placed in evidence.

2.  The Deputy shall request emergency medical personnel to examine the subject. Deputies or Emergency Medical Personnel will apply a bandage or other appropriate medical treatment to the puncture site.

3.  If the probes cannot be removed because of an unusual penetration or a hit to head, groin, or female breast, the subject shall be transported by EMS to an appropriate health care facility. Deputies shall not remove the probes if the probes are located in sensitive areas, e.g., groin, breasts, head area.

4.  Deputies must be aware that one easily overlooked aspect of injury in applying a TASER X26 to a person is that of falling from a standing position. An examination with particular emphasis on secondary injuries should be performed by emergency medical personnel if on-scene; otherwise, by the on-scene supervisor.

5.  Deputies shall complete a Use of Force form to be submitted with a Harris County Constable's Office Incident Report, along with copy of Taser download. These documents should be forwarded to the Taser Program Supervisor for review.

6.  When booking the subject into the Inmate Processing Center, the transporting Deputy shall advise the intake Deputy (that the conducted electrical weapon (TASER X26) was deployed on the individual.

N.  Supervisor Responsibilities:

1.  Respond to scenes where the conducted electrical weapon (TASER X26) has been deployed by a Harris County Constable's Deputy.
2.  Summon emergency medical personnel to administer emergency medical care, if this has not already been done.
3.  Investigate and document each incident in which a TASER X26 is deployed. All reports of deployments shall be forwarded up the affected employee's chain



## CONSTABLE ALAN ROSEN
### HARRIS COUNTY CONSTABLE'S OFFICE
### Precinct One

www.pct1constable.net

| SUBJECT: | POLICY #: | # of Pages |
|---|---|---|
| **USE OF FORCE** | **501** | **14** |

of command within 24 hours. The completed report shall be forwarded to the Taser Program Supervisor within 36 hours. TASER deployments will require an Offense Report and a Use of Force Report except in the below mentioned circumstances:

The following deployments will only require an Information Report:

   a. Accidental discharge
   b. Animals

4.   Ensure that photographs are taken of the probe penetration sites and any secondary injuries. The photos will be marked and packaged as evidence, and submitted appropriately. Note: If the probe locations are in sensitive areas such as the groin or a breast, photographs shall be taken by a Crime Scene Technician or Deputy of the same gender.

5.   The designated supervisor shall download the Taser and attach the download document to the Use of Force report. In addition the Taser download should be saved in the Taser directory on the network share maintained by the Taser Program Supervisor.

6.   Any Taser that is involved in a Use of Force incident where there is hospitalization/serious bodily injury, death or suspected wrongful use shall be taken immediately and given to the Internal Affairs Division for download and investigation of incident. The Taser shall remain in the possession of the designated investigative unit until the case is resolved. Notification of possession of equipment shall be made to the Taser Program Supervisor so it can be reflected in the Master Taser Inventory. Replacement Taser may be issued if one exists.

O.   Care and Use of Conducted Electrical Weapon (CEWs):

1.   Taser Supervisors shall conduct routine line inspections to ensure the batteries of their own, and their Deputies' TASER X26 System are properly charged. The Constable's Office shall issue the DPM's (Batteries). When conducting an inspection of the TASER X26 System, regardless if a test discharge is conducted, the inspecting supervisor shall remove the probe cartridge prior to conducting the inspection. If the battery percentage registers 20% or less, a new battery will be issued to the Deputy. The old battery shall be turned in to the Taser Program Supervisor be used as a trainer until it registers 2% or less, at which point it will be discarded.



# CONSTABLE ALAN ROSEN

## HARRIS COUNTY CONSTABLE'S OFFICE

### Precinct One

www.pct1constable.net

| SUBJECT: | POLICY #: | # of Pages |
|----------|-----------|------------|
| **USE OF FORCE** | **501** | **14** |

2. Any Deputy with a defective or damaged TASER X26, or part thereof, shall notify a Taser supervisor immediately. The Taser supervisor shall take possession of the TASER X26 (County Owned), or part thereof, and retain possession of it until such time as it can be returned to the Taser Program Supervisor (TPS) to have the equipment repaired or replaced.

3. The TASER X26 is programmed to give a 5-second discharge. The probes should not be touched during this time period, as anyone coming in contact with the probes will also receive the same discharge. Deputies should avoid stepping on or tripping over the TASER wires.

4. Deputies should keep their hands away from the front of the unit at all times unless the safety slide is forward and the TASER X26 is deactivated.

5. The TASER X26 should not be fired near flammable liquids and fumes. The TASER X26 can ignite gasoline or other flammables. Some self-defense sprays are flammable and would be extremely dangerous to use in conjunction with the TASER X26. If a subject is near, or is known or suspected to have been sprayed or doused with any type of flammable substance(s), Deputies shall not deploy the TASER X26 to subdue the subject. Deputies shall be required to use another less lethal method to subdue the subject.

P. Use of Conducted Electrical Weapon (CEWs) Devices on Animals:
The full effect of the TASER X26 System on animals is not yet proven it should be noted that animals have shown the ability to quickly recover from effects of Electronic Incapacitation Devices. If utilized, Deputies should be prepared to act quickly after the TASER X26, deployment temporarily disables the animal.

The use of the TASER X26 System on any animal will not require a Use of Force form; however, an incident report shall be completed and supervisor notification shall be made immediately upon deployment. A supervisor shall respond to the scene.

**Revision:**

This policy has been revised on the below listed dates:

February 28, 2013

July 2014